**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID P. OETTING, JAMES OETTING, individually, and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>HEFFLER, RADETICH & SAITTA, LLP, EDWARD J. SINCAVAGE, EDWARD J. RADETICH, JR., AND MICHAEL T. BANCROFT,<br><br>Defendants. | ) | Case No. 2:11-cv-04757-JD |

**SECONDED AMENDED AND RESTATED COMPLAINT – CLASS ACTION**

COMES NOW Plaintiff David P. Oetting, and the class he seeks to represent, by and through his counsel of record, and having been granted leave by the Court, files this SECONDED AMENDED AND RESTATED COMPLAINT, and show as follows:

The Second Amended and Restated Complaint incorporates the following changes:

- The amended complaint adds as an additional plaintiff James Oetting who is also a class member of the NationsBank Classes who cashed all checks issued to him and is eligible for any further distributions.
- The definition of the purported class has been changed from those authorized to receive any further distributions under the NationsBank settlement to all the members of the NationsBank class (a) who were entitled to receive a distribution from the Action, defined below, in 2004; (b) who have received a distribution at any time from the Action and (c) who are yet to receive a distribution from the

Action (collectively "NationsBank Recipients").

- The amended complaint adds additional individual defendants.
- The amended complaint adds additional causes of action.

**Introduction**

1. On October 16, 1998, a class action complaint was initiated against BankAmerica Corporation regarding the merger of NationsBank.

2. Numerous suits were filed throughout the country. The Multi-District Litigation Panel issued a transfer order on February 12, 1999. The cases were consolidated for discovery in the Eastern Division of the Eastern District of Missouri. The late Honorable John F. Nangle was the appointed Judge. The Honorable Carol Jackson succeeded Judge Nangle. The case is styled *In re BankAmerica Securities Litigation* 4:99-md-1264 CEJ (herein the "Action").

3. By order dated July 6, 1999, Judge Nangle certified four different classes for litigation, (1) NationsBank Holder Class, (2) NationsBank Purchaser Class, (3) BankAmerica Holder Class, and (4) BankAmerica Purchaser Class. The original class representatives appointed for the NationsBank Holder Class were David P. Oetting, Joseph Hempen, and John M. Koehler.

4. Heffler initially began its involvement in the BankAmerica Corp. Securities Litigation by making a proposal to previous class counsel. See attached as Ex. "A" (HRS000264)[1]. In that proposal Heffler set forth what the charges would be for the numerous tasks that would be involved in the notification to the class and the claims administration. See Ex. "B" (HRS000293) attached hereto.

5. The Proposal was consummated with an engagement letter dated March 2, 2002, from Heffler to the two lead class counsel ("Engagement letter" or "Letter"). See attached as Ex.

[1] The "HRS000xxx" reference is the Bate Stamp numbering used by Heffler in the production of documents.

"B" (HRS000293). The Proposal and Letter each described in detail the qualifications, systems, and processes to be used by Heffler as had been developed by it over the decades. It had administered dozens of class action cases.

6. In its Proposal, Heffler emphasized its expertise in "investigative accounting" and the administrations of class actions. Ex. "A" at 1(HRS000266). The Proposal stated the "Class Action department is staffed with individuals who are extensively trained and work exclusively in this field." *Id.* It describes "state of the art computer equipment" which it is "constantly upgrading". *Id*. at 2 (HRS000267).

Heffler "assure[s] a quality product by:

- Creating a specifically tailored audit program. . .
- Having a ***partner, manager or other senior staff member constantly review***. . ." [and]
- Using their "***experience as Certified Public Accountants*** . . . build ***checks and balances into our procedures which assures the accuracy of all our work***.

*Id.* at 3 (HRS000268) (Emphasis added).

7. Highlighted in the Proposal are the resumes and qualifications of the certified public accountants involved in the Claims Administration department of Heffler's practice.

- Edward J. Radetich, Jr., a Certified Public Accountant ("CPA"), is included and described as having "extensive background in investigative and litigation accounting"; having been involved in class action settlements for three decades, he has "primary responsibility" for the firm's class action practice and was responsible for the "design and implementation of the guidelines and procedures" .

. . including "***auditing of claims*** . . . [and the] ***distribution procedures*** . . .". *Id.* at 11 (HRS000276) (Emphasis added).

- Michael T. Bancroft, a CPA, has been involved in over 200 class actions and supervises "claim calculations, auditing of claims . . . and ***sending checks***". *Id.* at 12 (HRS000277) (Emphasis added).
- Edward J. Sincavage, a CPA, supervises "claim calculations, auditing of claims . . . and ***sending checks***". *Id.* at 13 (HRS000278) (Emphasis added).
- Michael E. Hamer, a Manager, formerly worked at a major regional bank and supervises "claim calculations, auditing of claims . . . and ***sending checks***". *Id.* at 14 (HRS000279) (Emphasis added).
- Sandra L. Heinze, an Administrative Manager, supervises all aspects of class action administrations, "including, but not limited to . . . database management, claim calculations, auditing of claims, ***sending of checks . . . and the reconciliation of checks***". *Id.* at 16 (HRS000281) (Emphasis added).

8. In the Engagement Letter with class counsel, Heffler set forth its detailed procedures followed from beginning to the end, including "pick up mail at U.S. Post Office". Ex. B at HRS000295. These detailed steps and systems were designed to assure accuracy. As described in the Letter, there are four distinct steps involved in the class administration: (i) Notification; (ii) Claims Administration; (iii) Distribution Services; and (iv) Post-Distribution Services. Ex. A -- Proposal at HRS000269-73 and Ex. B -- Engagement Letter at HRS0000293-96. Included in the Distribution Services is "set(ting) up a distribution checking account . . . including positive pay and account reconcilement features to ***guard against possibly fraudulent checks***". *Id. at* HRS000296 (Emphasis added).

9. On April 5, 2002, Judge Nangle preliminarily approved the proposed settlement and appointed Heffler, Radetich & Saitta, LLP as Claims Administrator. In that Order, Judge Nangle set forth the duties of the Claims Administrator. Judge Nangle also set forth the conditions for a properly filed claim. It was the Claims Administrator's responsibility to reject claims that were improper and such claimant had the right to be heard before the Court.

10. On September 30, 2002, the Court issued an Order approving the terms of the settlement and revised the plan of allocation for the plaintiff classes against BankAmerica Corporation.

11. The settlement fund was $490 million ($333.2 million to the NationsBank class and $156.8 million to the BankAmerica class).

12. The plaintiffs and the class now assert claims against Heffler, Radetich & Saitta, LLP ("Heffler"), the certified public accounting firm hired as the Claims Administrator in this action, its partners Edward J. Sincavage ("Sincavage"), Michael T. Bancroft ("Bancroft"), and Edward J. Radetich, Jr. ("Radetich) (collectively the "defendants") relating to the administration of the settlement, the fraudulent charges for the work performed, and the processing of proofs of claims.

13. The plaintiffs and the class are intended third-party beneficiaries of the contract for services between Heffler and lead counsel for the NationsBank classes. Heffler continues to serve as Claims Administrator.

14. Heffler's ex-employee Christian Penta ("Penta") defrauded three separate class actions in which Heffler was serving as the claims administrator, including the BankAmerica Corp. Securities Litigation classes, out of tens of millions of dollars. The amount Heffler approved for payment on the false claims submitted by Penta and his co-conspirators from the

NationsBank Class settlement fund was over $5.87 million. (In the meantime, Heffler has been awarded a restitution judgment against Penta for over $19 million.)

15. The plaintiffs and the class seek damages against the defendants for improperly paying on false claims filed by its employee in this Action and the fraudulent charges for the work they performed in the Action.

**Parties**

16. David P. Oetting is a resident citizen of St. Louis, Missouri and is the lead plaintiff and class representative of the NationsBank Classes.

17. James Oetting is a resident citizen of St. Louis, Missouri and is a member of the NationsBank Classes.

18. Heffler is a limited liability partnership and a citizen of the States of Pennsylvania and New Jersey with its principal place of business in Philadelphia, Pennsylvania.

19. Edward J. Sincavage is believed to a resident-citizen of Philadelphia, Pennsylvania.

20. Edward J. Radetich, Jr. is believed to a resident-citizen of Philadelphia, Pennsylvania. Sincavage and Radetich are all believed to be partners in Heffler, Radetich & Saitta, LLP ("Heffler"), and were at the time of the actions alleged throughout this complaint.

21. Michael T. Bancroft is believed to a resident-citizen of Philadelphia, Pennsylvania. Bancroft is no longer with Heffler but was a partner in Heffler at the time of the actions alleged throughout this complaint.

22. The defendants have submitted to the jurisdiction of this Court in connection with their service as Claims Administrator in the NationsBank Class action.

## Jurisdiction and Venue

23. This class action consists of class members located throughout the United States. The amount in controversy exceeds $5,000,000.00 (Five Million dollars) exclusive of interest and costs. Accordingly, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(d) (as modified by the Class Action Fairness Act of 2005). Venue in this case is proper in this District pursuant to 28 U.S.C.§ 1391, in that a substantial portion of the acts and events giving rise to plaintiffs' causes of action occurred in the district of Missouri. These acts include the release and payment of funds from the NationsBank Settlement Fund at US Bank in St. Louis, Missouri to Heffler's employee. Additionally, Heffler appeared before this Court on multiple occasions in connection with the work it performed in this Action and has voluntarily submitted itself to the jurisdiction of this Court. Penta performed his work under the guise of his employer, Heffler.

## General Allegations

24. On or about September 20, 2002, the Court approved a settlement in which the class action defendants agreed to pay $490 million to the class members in the Action ($333.2 million to the NationsBank class and $156.8 million to the BankAmerica class).

25. Heffler, as the Claims Administrator, was responsible for reviewing submitted claims, identifying valid and invalid claims, and distributing the settlement proceeds to valid claimants who were members of the NationsBank Class or the BankAmerica Class. As part of its responsibility, defendants were required to determine whether, and to what extent, the claimants in each class were entitled to a share of the settlement.

26. To share in the NationsBank Class settlement fund, NationsBank Class members were required to submit to Heffler a signed proof of claim with supporting documentation by a date specified by the Court. The information in the proof of claim and supporting documentation was

required to establish the legitimacy of the claim and the pro rata share of the settlement fund to which each NationsBank Class member was entitled.

27. Penta worked as a "Senior Accountant" for Heffler and was assigned to help administer the settlement in this action. In his employment by Heffler, Penta was responsible for various aspects of the claims process, including reviewing claim documents to determine if a claimant was entitled to recovery and addressing any issues that arose with claimants who had submitted high value claims. At all relevant times, Penta was Heffler's agent, servant and employee.

28. During the administration of the settlement, Penta submitted or cause to be submitted to Heffler false claims seeking payments from the NationsBank Class's settlement fund.

29. On or about May 13, 2004, lead counsel for the NationsBank Class filed a motion for a partial distribution of the NationsBank Settlement funds. In support of the motion, lead counsel filed an affidavit from Heffler stating that Heffler had examined and calculated all claims forms to determine that they were properly completed, signed, and documented. Heffler also submitted a computer printout showing its proposed allocation of the NationsBank Settlement funds among the NationsBank Class claimants.

30. On or about June 14, 2004, the Court granted the motion for distribution and ordered distribution of the NationsBank Settlement fund in accordance with Heffler's examination and calculations. This distribution included payment(s) of over $5.87 million based on false claims submitted by Penta and his co-conspirators and approved by defendants.

**Class Allegations**

31. Plaintiffs bring this action as a class pursuant to Federal Rules of Civil Procedure Rule 23. Plaintiffs assert their claims individually and on behalf of a class of all persons similarly situated, who are defined as to all the members of the NationsBank classes (a) who were entitled

to receive a distribution from the Action in 2004; (b) who have received a distribution at any time from the Action and (c) who are yet to receive a distribution from the Action (collectively "NationsBank Recipients").

32. Specifically excluded from the Class action are the defendants, and any entity in which the defendants have a controlling interest, and the officers, directors, employees, successors or assigns of any individual or entity.

33. *Rule 23(a)(1) Numerosity*. The members of the class are numerous. Joinder is impractical. The number of NationsBank Recipients under the BankAmerica Corp. Securities Litigation is in the thousands. The NationsBank Recipients are easily identifiable from the records in the BankAmerica Corp. Securities Litigation records.

34. *Rule 23(a)(2) Common Questions of Law or Fact*. There are questions of law or fact common to the class which predominates over any questions affecting only individual members. Common question of law and fact include, *inter alia*:

(a) Whether defendants, through their wrongful conduct, caused the settlement fund to be depleted by an amount of over $5.0 million;

(b) whether defendants, through their wrongful conduct, caused the claimants in the NationsBank classes to receive less than their proportional share that otherwise would have been paid;

(c) whether class members are entitled to have the monies wrongfully paid to non-claimants to be restored to the settlement fund to be redistributed on a proportional share; and

(d) whether defendants' wrongful conduct caused injury to plaintiff and, if so, what are the appropriate measure of damages sustained as a result of

the defendants' conduct and/or what other relief, if any, may be appropriate.

35. *Rule 23(a)(3) Claims of the Representative Party are Typical of the Claims of the Class*. Plaintiffs are members of the class. The claims of plaintiffs are typical of those of the class. Plaintiffs, as well as the other class members, were members of the previously certified class. Plaintiffs and all class members filed valid claims with the claims administrator. All were or are to be paid on their claims. The wrongs against class members will be proven through proof of the wrongs against plaintiffs. Plaintiffs have no interests that are adverse or antagonistic to those of the class.

36. *Rule 23(a)(4) Adequacy of Representation*. Plaintiffs and their counsel will fairly and adequately protect the interests of the class. Plaintiffs have retained counsel experienced in the prosecution of class actions. Further, the acts of which plaintiffs complain are applicable to all class members. All class members seek common forms of relief and present a common factual underpinning. Plaintiffs suffered damages by reason of defendants' wrongful conduct. Plaintiffs have no interest antagonistic to class members and will fairly and adequately represent them. Plaintiff's counsel has been appointed the new class counsel for the NationsBank classes in the Action in St. Louis.

37. *Rule 23(b)(3) Predominate and Superiority of Class Actions*.

(i) A class action is superior to other available methods (if any) for the fair and just adjudication of class member's claims. The relatively small dollar amount individuals and entities class members claim when compared to the impact that an adjudication of liability in an individual action would present for defendants makes costly individual suits impractical for class members. Defendants could pour tremendous resources into the litigation of an individual suit, forcing individual plaintiffs to expend comparable sums that would most likely consume the entire dollar amount of their claims. Absent a class action, class members will have no cost-effective

form of relief.

(ii) A class action is in the best interest of judicial economy. Proof of the wrong committed against plaintiffs will provide proof of the wrong committed against all class members. Identification of the class members can be easily determined from the records in the Action. Notice can be easily provided to all class members. One court can thoroughly adjudicate all class members' claims with respect to the conduct complained of therein.

**Count I**
**(Breach of Fiduciary Duty)**

36. Plaintiffs and the class incorporate by reference and re-allege the preceding paragraphs as though fully set forth herein.

37. As accountants, Heffler had fiduciary obligations to plaintiffs and the class. Heffler had a duty of care and a duty of loyalty to the plaintiffs and the class for so long as Heffler remained the Claims Administrator.

38. Heffler breached its duties to plaintiffs and the class. Specifically, Heffler breached its duty of care by approving payment of false claims submitted by its employee Penta.

39. Heffler has an "Employee Handbook" which covers a broad range of firm operations. Ex. "C" attached hereto (HRS000506-16). Included are descriptions of operating rules and procedures. The handbook, emphasizing high standards for ethics and practice, points to the "partners" to "manage the firm". Specifically, the "executive partner(s)" are responsible for enforcement of matters covered by the handbook. *Id.* at HRS000509. The handbook describes the specialization of the firm in the administration of "class action settlements", specifically including review of "claims filed by individuals, businesses and other entities, and to ***audit*** such claims . . .". *Id.* at HRS000510 (Emphasis added). Heffler describes its firm's philosophy as including the fact that "Each client has one Partner who is ***personally*** responsible for all of that client's work."

*Id.* at HRS000511 (Emphasis added).[2]

40. As part of its services, Heffler specified that it provides "auditing services relating to investigations such as fraud." *Id.* at HRS000512. Heffler neglected to audit itself for fraud as it advertised, represented, and agreed.

41. Heffler's "LITIGATION DEPARTMENT TRAINING MANUAL" reiterates many of the processes found in other writings but includes one direction in particular with regard to Claims Administration, "**9. Check top (largest) Claims**". Ex. "D" attached hereto at 6 (HRS000010).

42. All of the claims that Heffler authorized for payment included the very large claims making up the missing $5.8 million. Heffler uncovered exactly ***none*** of them. Fortunately, the U.S. Attorney's office in Philadelphia was doing its job or there would have been another $20 million paid out. Ex. "F" attached hereto, Transcript at 6, *U.S. v. Penta* (E.D. Penn., Case No. 08-550-01)(March 29, 2010), *Savage, J.*.

43. Plaintiffs and the class were thereby damaged in amount believed to be in excess of$5.87 million. It was improperly allocated to and paid on false claims submitted by Penta rather than paid out to the members of the plaintiffs and the class.

44. Heffler's breach of its fiduciary duties was the direct and proximate cause of the damages to plaintiffs and the class.

45. Heffler is liable to the plaintiffs and the class for beach of its fiduciary duty.

[2] In the Bank of America Securities case, that partner is Mr. Sincavage, according to his own testimony. Ex. "E" attached hereto, Transcript at 8, *U.S. v. Penta* (E.D. Penn., Case No. 08-550-01) (November 23, 2009), *Savage, J*. He was in charge of Mr. Penta and all others involved in the administration of the class.

**Count II**
**(Accountant Malpractice)**

37. Plaintiffs and the class incorporate by reference and re-allege the preceding paragraphs as through fully set forth herein.

38. In the course of its business, Heffler was given the duty by the court to reject all unauthorized claims submitted to the Claims Administrator on behalf of the plaintiff and the class. The plaintiffs and the class were third party beneficiaries to the contract of employment the Claims Administrator had with the counsel representing the NationsBank classes in the BankAmerica Corp. Securities Litigation.

39. Because of a failure by Heffler to exercise reasonable care, it approved unauthorized claims filed by Penta which should have been easily detected as false.

40. Heffler breached the standard of care as accountants by failing to detect the false claims of Penta.

41. Plaintiffs and the class reasonably and justifiably relied on that Heffler would not authorize for payment bogus claims.

42. Due to their reliance, plaintiffs and the class suffered a pecuniary loss of approximately $5.87 million.

43. Heffler is liable to plaintiff and the class for negligence and malpractice in the amount to be determined by a struck jury.

**Count III**
**(Fraud By Bancroft and Sincavage)**

44. Plaintiffs and the class incorporate by reference and re-allege the preceding paragraphs as through fully set forth herein.

45. Heffler has served as the claims administrator in the Action (the "litigation") since

being hired back in 2002.

46. According to its Employee Handbook, Heffler had seven staff positions within the firm. They were Clerical Staff, Staff Accountant, Semi-Senior Accountant, Senior Accountant, Supervisor, Manager, and Administrator. Each of these positions had different qualifications and duties. For example, according to the Handbook:

> Senior Accountant (Approximate Time Frame: Three to Seven Years) A senior accountant has developed the technical skills to handle most phases of an engagement and has satisfied supervisors, managers and partners as to his/her ability to deal with clients on various issues of an engagement and the ability to supervise others.
>
> A Senior accountant is expected to:
>
> - Conduct and supervise engagements whether at the firm's offices or at a client's place of business.
> - Review and analyze client's internal control systems.
> - Prioritize work and develop the skills to evaluate tasks and resolve various situations.
> - Review all work of an engagement and present the completed engagement to a supervisor, manager or partner for final review.
> - Constantly look for ways to perform engagements in an efficient manner.
> - Begin to perform technical reviews and develop contacts to bring on potential new clients, business or cases.
> - Constantly look for opportunities to provide additional services to clients.
> - Plan engagements to achieve quality goals and reduce the time required to complete an engagement.
> - Possess the technical knowledge sufficient to supervise staff accountants and complete an engagement in a timely manner (meet pre-determined engagement time budgets and all required due dates).
> - Prepare management letters.

47. Under the terms of the engagement letter between Heffler and class counsel in the litigation the charge for **Claims Administration, Distribution and Post-Distribution Services, and Tax Services**, the proposal provided:

> The number of claims received will dictate the cost of administration. As the number of proof of claim forms that are filed increase, the administration cost, on a per-claim basis decreases. Our billing for the above services will be based on the following hourly rates:
>
> Partners $225.00 per hour

| | |
|---|---|
| Managers & Computer Programmers | $150.00 per hour |
| Accounting Supervisors | $95.00 per hour |
| Senior Accountants | $75.00 per hour |
| Associate Accountants | $55.00 per hour |
| Clerical Supervisors | $45.00 per hour |
| Clerical & Data Entry Personnel | $40.00 per hour |

48. In 2002, Bancroft hired Penta to serve in Heffler's claims administration department knowing that he did not have a high school diploma. He had not earned any degree in accounting and never earned a degree at any pertinent time.

49. Upon information and belief, while in the employ of Heffler from 2002- 2004, Heffler fraudulently billed the time Penta worked on the litigation as a "Senior Accountant".

50. Periodically, Heffler submitted these fraudulent bills for both time and expenses incurred in the administration of the settlement per the agreement it had with class counsel. The fraudulent billings had to be approved by the District Court in St. Louis, where the litigation was pending.

51. Unbeknownst to the Court of the fraudulent billings, the Court approved the payment to Heffler, and the settlement fund (property of the class) was used to pay Heffler.

52. Oetting and the class he seeks to represent were defrauded by the fraudulent billings submitted by Heffler for approval and payment in the litigation.

53. Both Bancroft and Sincavage knew that Penta did not qualify as a senior accountant in the Heffler structure and they knowingly submitted fraudulent billing statements for the work performed by Penta, and possibly others. These statements were paid from the settlement fund of the class and as a result, the class was damaged by the fraudulent actions of Bancroft and Sincavage.

54. Bancroft and Sincavage are liable to the plaintiffs and the class for fraud in an amount to be determined by a jury as well as for punitive damages.

**COUNT VI**
**(Negligence -- Radetich)**

55. Plaintiffs and the class incorporate by reference and re-allege the preceding paragraphs as through fully set forth herein.

56. Radetich was in charge of signing each and every check, done either manually or through an automated system. These checks were sent out to those class members making claims in the NationsBank class settlement.

57. Prior to signing the checks it was a specific duty owed to the class that he would "review and process each proof of claim filed, assuring that the claim is properly completed, signed and documented." He would then sign the checks and mail them to "approved claimants".

58. Prior to mailing the checks to the claimants Radetich failed to account for the bogus claims that had been filed with the assistance of Penta.

59. Radetich was responsible for reviewing the claims to make sure that that check amounts were correct and payable to "approved claimants". He failed to do so and breached his duty to the class.

60. Radetich signed the checks and had sent under his direction and control the checks that were paid to the "unauthorized claimants" totaling some $5.7 million.

61. As a result of Radetich's negligence, the Plaintiff and the class he seeks to represent were damaged.

62. Radetich is liable to the plaintiffs and the class for negligence in an amount to be determined by a jury.

**Count VII**
**(Negligence – All Defendants)**

63. Plaintiffs and the class incorporate by reference and re-allege the preceding paragraphs as through fully set forth herein.

64. Through Heffler's negligent supervision there are fifteen different claims and resultant checks issued that constitute the some $5.8 million paid to non-class members. Examination of this paperwork on each of the fifteen claims discloses that there were many opportunities available to Heffler to uncover and correct any misdeed of its employee, Christian Penta – or any mistake made by any other Heffler personnel – including its partners and top management.

65. Of the total loss, two checks of more than $1 million each constituted nearly 60% of the total loss. Four more six-figure checks constituted 34% of the loss. The balance of the loss was attributed to five-figure checks. See Ex. "G".

66. Central to the claims administration process are the computer records generated as a result of the claims received from shareholders or even fictitious claimants. Examination of the records for fifteen claims reveals that at least one person other than Penta had access to and imputed data on each of the computer files of these claims. Each of the checks that were sent out was signed by one of the partners in charge, Edward J. Radetich, Jr. Penta was the last person to make an entry in the computer before the checks were sent out on only two of the claims. In neither of those instances did Penta change the number of shares or the amount of the claim. See Ex. H, Claim No. 97422 (HRS000302) and Claim No. 500390 (HRS000352).

67. Examination of the actual paper trail associated with the individual checks reveal

another truth about the Heffler operation, specifically that there were a number of people at Heffler who were involved with the claims administration over a number of months, allowing ample time and opportunity for supervisory review.

- For example, Claim No. 500390 involved an alleged shareholder named "Companhia Interamerican" which supposedly owned 3,870,000 shares. This claim had been handled initially by "MEH" "Mike" (Michael E. Hamer) and "MB" (Matthew Berman) in addition to "CP" "Chris" (Christian Penta). Ex. H (HRS000352). Indeed, Hamer made the first four entries on January 4, 2004 and Berman made the last entry on June 8, 2004 prior to the check, dated July 16, 2004, being issued. *Id.* The check was in the sum of $1,904.171.64. Ex. I (HRS000349). Despite the fact that the claimant was a foreign entity and provided no Federal EIN, the check was sent over the signature of Edward J. Radetich, Jr., a CPA partner in the firm. *Id.* Despite six months and three different persons other than Penta being involved, this enormous check escaped serious scrutiny and detection. The internal check and balance system established by Heffler failed.
- Another example is Claim No. 500408 involving another foreign entity named "KimCorp PTE LTD" which supposedly owned 1,911,500 shares. Ex. J (HRS000353-61). Despite a variety of reviews by apparently four persons other than Penta, including initial input on February 4, 2004 by "JTC" "John" (HRS000361), the check for $940,523.02, dated July 16, 2004, was sent out over the signature of Edward J. Radetich, Jr. *Id*. (HRS000358). Again, the passage of six months and the involvement of several persons did not lead to the discovery of the fictitious entity and claim.

Each of the fifteen checks was large. Over 90% of the misdirected funds were sent by six or seven-figure checks representing millions of shares each, indicating some of the largest shareholders of the company. The simple magnitude of these claims should have attracted attention under Heffler's advertised procedures it was supposed to have. Despite Penta's activities, from the time the input was made until the checks were cashed, Heffler had more than adequate time to audit and double check the large claims and checks. But Heffler's partners, CPAs, managers, and its established systems and procedures failed to catch a single one.

68. Defendants are liable to the plaintiffs and the class for negligence in an amount to be determined by a jury.

**Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

John Weston
Sacks Weston Millstein Diamond LLC
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 764-3008
jweston@sackslaw.com

Frank H. Tomlinson
Ala. Bar No. ASB-7042-T66F
2100 1st Avenue North, Suite 600
Birmingham, AL 35203
Telephone: (205) 326-6626
Telecopier: (800) 856-9028
Hilton@tomlawllc.com
Admitted pro hac vice

Attorneys for Plaintiffs

**SERVICE INSTRUCTIONS**

Counsel of Record for Defendant, Heffler, Radetich & Saitta, LLP will accept service of the Second Amended Complaint for the Defendants, Heffler, Radetich & Saitta, LLP, Edward J. Sincavage, and Edward J. Radetich.

Defendant Michael T. Bancroft is to be served by certified mail at the following address:

Michael T. Bancroft
c/o Americas at Goal Group Limited
1735 Market Street, Suite 3750
Philadelphia, PA 19103