IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID P. OETTING, and,<br>JAMES OETTING, Individually and on<br>behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>           v.<br><br>HEFFLER, RADETICH & SAITTA, LLP,<br>EDWARD J. SINCAVAGE,<br>EDWARD J. RADETICH, JR., and<br>MICHAEL T. BANCROFT,<br>           Defendants. | CIVIL ACTION<br><br><br><br><br>NO.  11-4757 |

DuBois, J.                                                                                                    December 16, 2015

**M E M O R A N D U M**

**I.     INTRODUCTION**

This accounting malpractice case arises out of defendant Heffler, Radetich, & Saitta, LLP's ("Heffler") management of the distribution of the settlement fund in a long-running multi-district litigation in the United States District Court for the Eastern District of Missouri. The case was originally filed as a separate action in that district but was transferred to this Court pursuant to 28 U.S.C. § 1404 by Order dated July 25, 2011.

On September 3, 2015, plaintiffs David P. Oetting ("David Oetting") and James Oetting filed a Second Amended Complaint against Heffler and three individual defendants, Edward J. Sincavage, Edward J. Radetich, Jr., and Michael T. Bancroft, who were partners at Heffler while the firm managed the settlement fund. Plaintiffs seek to represent a class of persons who were entitled to receive distributions from the settlement fund. The Complaint seeks damages for harm suffered by the individual plaintiffs and the class due to (1) fraudulent claims authorized for payment from the settlement fund by a Heffler employee and (2) bills submitted by Heffler for

payment from the settlement fund that allegedly contained fraudulent charges. Plaintiffs assert claims for breach of fiduciary duty and "accountant malpractice" against Heffler, claims for fraud against Bancroft and Sincavage, and negligence claims against all defendants.

Presently before the Court are Heffler's Motion to Dismiss this Action and the individual defendants' Motion to Dismiss this Action. For the reasons that follow, the Motions are granted in part and denied in part. Defendants' Motions are granted to the extent that they seek to dismiss David Oetting as a plaintiff for lack of Article III standing. The Motions are denied in all other respects.

## II. BACKGROUND

The facts of this case as alleged in plaintiffs' Second Amended Complaint and attached exhibits are as follows. This litigation originates out of securities litigation following a merger between BankAmerica Corporation ("BankAmerica") and NationsBank. On October 16, 1998, the first of numerous class actions was initiated against BankAmerica. Second Am. Compl. ¶ 1. The Multi-District Litigation Panel issued a transfer order on February 12, 1999, consolidating all cases relating to the merger for discovery in the Eastern Division of the United States District Court for the Eastern District of Missouri. Second Am. Compl. ¶ 2. Judge John F. Nangle was the appointed judge. Judge Carol E. Jackson succeeded Judge Nangle upon his death. *Id.* The multi-district litigation, which is still ongoing, is identified as *In re BankAmerica Corp. Securities Litigation*, 99-md-1264 (E.D. Mo.) ("the MDL").

By Order dated July 6, 1999, Judge Nangle certified four classes for litigation: (1) the NationsBank Holder Class, (2) the NationsBank Purchaser Class, (3) the BankAmerica Holder Class, and (4) the BankAmerica Purchaser Class. Second Am. Compl. ¶ 3. David Oetting, one of the plaintiffs in this action, was one of the original class representatives for the NationsBank

Holder Class. *Id.* Plaintiff James Oetting was a member of the NationsBank Holder Class. Judge Nangle approved a settlement between the MDL defendants and all four of the MDL classes by Order dated September 20, 2002. Second Am. Compl. ¶ 24. Under the terms of the settlement agreement, the MDL defendants agreed to pay $490 million to the class members, with $333.2 million allocated to a combined NationsBank class and $156.8 million allocated to a combined BankAmerica class. *Id.*

Following submission of a proposal to class counsel, Heffler was appointed by the MDL court as the Claims Administrator for the settlement. Second Am. Compl. ¶¶ 4-9, 25-26. As Claims Administrator, Heffler was responsible for publicizing the settlement, receiving and reviewing submitted claims, identifying valid and invalid claims, and distributing the settlement proceeds to valid claimants. Second Am. Compl. ¶ 25-26. The individual defendants in this case were partners at Heffler during the time that the firm oversaw distribution of the MDL settlement fund. Second Am. Compl. ¶ 12.

On May 13, 2004, lead counsel for the NationsBank class filed a motion for partial distribution of the NationsBank settlement fund. Second Am. Compl. ¶ 29; Plaintiffs' Joint Motion for Approval of Distribution of Class Settlement Fund, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. May 13, 2004), Doc. No. 616. In support of that motion, counsel submitted an affidavit from Sincavage stating, *inter alia*, that Heffler had examined and calculated all claims forms to determine that they were properly completed, signed, and documented. Second Am. Compl. ¶ 29. By Order dated June 14, 2004, Judge Nangle granted the motion and approved partial distribution of the settlement funds in accordance with the motion and the attached affidavit from Sincavage. *Id.*; Order, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. June 14, 2004), Doc. No. 630.

Both David Oetting and James Oetting submitted claims and received distributions from the settlement fund. David Oetting did not cash the checks he received from the settlement fund. James Oetting "cashed all checks issued to him." Second Am. Compl., at 1.

During Heffler's administration of the settlement but prior to the distribution of settlement funds authorized by the MDL court's June 14, 2004, Order, a then-employee of Heffler, Christian Penta, submitted false claims seeking payment from the NationsBank class's settlement fund.[1] Second Am. Compl. ¶ 28. Plaintiff alleges that the distribution included "payment(s) of over $5.87 million based on false claims submitted by Penta and his co-conspirators." Second Am. Compl. ¶ 30.

After discovery of the fraud, plaintiff David Oetting filed this lawsuit in the Eastern District of Missouri on behalf of a putative class of NationsBank settlement claimants. Complaint, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. Feb. 8, 2011). The Complaint named Heffler as the sole defendant, and included claims for breach of fiduciary duty, "accountant malpractice," and *respondeat superior* liability based on the conduct of its former employee, Penta. *Id.* By Order dated July 25, 2011, Judge Jackson dismissed the *respondeat superior* claim on the ground that it failed as a matter of Missouri tort law because Penta acted outside of the scope of his employment. Memorandum and Order, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. July 25, 2011), Doc. No. 18. By Order that same date, Judge Jackson transferred the case to this Court on Heffler's motion

---

[1] In 2008, after the fraud was uncovered, the grand jury issued an indictment against Penta and four co-conspirators on charges including mail fraud, wire fraud, and tax evasion. Penta and his conspirators were accused of making false claims on three separate class action settlement funds managed by Heffler, including the *In re BankAmerica* fund. Indictment, *United States v. Penta et al.*, Criminal Action No. 08-550 (E.D. Pa. Sept. 11, 2008) (Savage, J.). Penta subsequently pled guilty to mail fraud, wire fraud, and filing a false tax return, and was sentenced to sixty months imprisonment and ordered to pay $19.571 million in restitution.

pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. Memorandum and Order, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. July 25, 2011), Doc. No. 19.

Following the transfer, on August 16, 2011, plaintiff David Oetting filed the First Amended Complaint. Heffler filed an Answer to the First Amended Complaint on September 13, 2011. By agreement of the parties, by Order dated February 8, 2012, this case was placed in the Court's Civil Suspense File pending the outcome of litigation between Heffler and its liability insurance carrier.[2] While the case was in suspense, on September 10, 2013, plaintiff filed a Motion for Leave to File an Amended Complaint and Add Additional Parties. The Court granted that Motion by Order dated September 24, 2013. Plaintiff then filed a praecipe to the Clerk of Court to withdraw the Motion for Leave to Amend on October 9, 2013.

Once the insurance coverage dispute was resolved, the case remained in the Civil Suspense File at the request of the parties pending the outcome of other related litigation in the Eastern District of Missouri. Specifically, the parties requested that the case remain in the Civil

---

[2] The insurance coverage case was also assigned to the undersigned Judge. In a Memorandum and Order dated June 27, 2013, the Court granted the motion of Heffler's insurer for summary judgment and issued a declaratory judgment capping Heffler's insurance coverage in this case at $100,000 under a sub-limit in Heffler's insurance policy for "misappropriation, misuse, theft, or embezzlement of funds." *CAMICO Mutual Ins. Co. v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-4753, 2013 WL 3481527 (E.D. Pa. June 28, 2013). That decision was affirmed on appeal by the United States Court of Appeals for the Third Circuit. *CAMICO Mutual Ins. Co. v. Heffler, Radetich, & Saitta, LLP*, 587 F. App'x 726 (3d Cir. 2014).

Suspense File until final disposition of the remaining MDL settlement funds and pending the outcome of litigation between plaintiff David Oetting and MDL lead plaintiffs' counsel.[3]

By Order dated August 21, 2015, upon consideration of a joint status report submitted by the parties and a telephone conference on that date, the Court transferred the case from the Civil Suspense File to the Court's active docket. The Court further ordered that "[p]laintiff is granted leave to file and arrange for service of an amended complaint on or before September 5, 2015."

Plaintiffs filed their Second Amended and Restated Complaint on September 3, 2015. The Second Amended Complaint includes five separate claims for relief: a claim for breach of fiduciary duty against Heffler (Count I), a claim for "accountant malpractice" against Heffler (Count II), claims for fraud against Bancroft and Sincavage (Count III), a claim for negligence against Radetich ("Count VI" [sic]), and claims for negligence against "all defendants" ("Count VII" [sic]). The Second Amended Complaint asserts these claims on behalf of individual plaintiffs David Oetting and James Oetting, and on behalf of "a class of all persons similarly situated, who are defined as all members of the NationsBank classes (a) who were entitled to receive a distribution from the [MDL] Action in 2004; (b) who have received a distribution at any time from the [MDL] Action and [sic] (c) who are yet to receive a distribution from the [MDL] action."

---

[3] The MDL settlement funds have not been fully dispersed. In September 2013, the MDL court approved distribution of remaining NationsBank settlement funds by *cy pres*. *See In re BankAmerica Corp. Securities Litig.*, 775 F.3d 1060, 1062 (8th Cir. 2015). However, the United States Court of Appeals of the Eighth Circuit vacated the *cy pres* award and remanded for further proceedings. *Id.* at 1067. This issue is still being litigated in the MDL as of the date of this Memorandum.
    David Oetting's suit against class counsel for the NationsBank class was dismissed on the ground that Oetting lacked Article III standing. *Oetting v. Green Jacobson, P.C.*, Civil Action No. 13-1148, 2014 WL 942952, at *2-3 (E.D. Mo. Mar. 11, 2014). This decision was affirmed on appeal on August 4, 2015. *Oetting v. Norton*, 795 F.3d 886, 890 (8th Cir. 2015).

On October 1, 2015, Heffler filed a Motion to Dismiss. In the Motion, Heffler argues that the Second Amended Complaint must be dismissed for three reasons: (1) because plaintiffs failed to file a motion to amend under Federal Rule of Civil Procedure 15(a); (2) because plaintiff David Oetting lacks Article III standing; and (3) because all of the claims are barred by releases included in Judge Nangle's Orders approving distributions from the MDL settlement funds. The individual defendants filed a separate Motion to Dismiss, also on October 1, 2015, incorporating Heffler's Motion to Dismiss and making the additional argument that the fraud claim against Bancroft and Sincavage (Count III) fails to satisfy the requirements of Federal Rule of Civil Procedure 9(b). For the reasons that follow, the Court rejects all of these arguments excepting only the argument that David Oetting lacks Article III standing. This determination does not require dismissal of the action, however, because the Second Amended Complaint properly added a plaintiff, James Oetting, who does have Article III standing.

### III.   DISCUSSION

#### a.   Federal Rule of Civil Procedure 15(a) and Leave to Amend

Defendants aver that because "plaintiff has already had an opportunity to amend his Complaint, Federal Rule of Civil Procedure Rule 15(a) required him to seek the Court's leave before amending his Complaint again." It is defendants' position that because no motion for leave to amend was filed, "the Second Amended Complaint was not properly filed" and "it should be treated as a nullity." The Court rejects this argument.

Rule 15(a) provides that "a party may amend its pleading once as a matter of course within (A) 21 days of serving it, or (B) . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12." The Rule further provides, "in all other cases, a

party may amend its pleading only with the opposing party's written consent or the court's leave."

The Second Amended Complaint in this case was filed with leave of Court, which was granted in the August 21, 2015, Order. Having received leave to amend, plaintiff was not required by Rule 15(a) to file a motion to amend the First Amended Complaint prior to filing the Second Amended Complaint.

The cases cited by defendants are not to the contrary. Rather, these cases stand for the proposition that leave to amend must be granted prior to filing the amended complaint, whether by motion or not, and that the granting of such leave is within the discretion of the district court. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[T]o request leave to amend a complaint, the plaintiff must submit a draft to the court so that it can determine whether amendment would be futile."); *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 502, 515-16 n. 10 (E.D. Pa. 2012) ("Where leave of court is required to amend the complaint, the plaintiff must request leave to amend. . . ."). These cases are inapposite because the Second Amended Complaint was filed with leave of the Court.

To the extent that defendants argue that the Court's grant of leave to amend was in error, the Court disagrees. As Rule 15(a) requires, "The Court should freely give leave when justice so requires." Leave to amend should be granted in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

The Court's decision to grant leave to amend did not prejudice defendants. There was no undue delay or dilatory motive on the part of plaintiffs because the case has been in the Court's Civil Suspense File for several years with the consent of both parties. Nor have there been repeated failures to cure deficiencies in the complaint, since this Court has yet to rule on any dispositive motions. No substantial discovery has been conducted in this case. Furthermore, defendants were able to immediately challenge the sufficiency of the Second Amended Complaint in the instant Motions to Dismiss. The Court thus finds no error in granting leave to amend the complaint pursuant to Rule 15(a).

### b. Article III Standing

Defendants argue that David Oetting lacks Article III standing because he failed to cash the settlement checks issued from the MDL settlement fund and therefore suffered no injury. Defendants further argue that, because David Oetting lacks standing, the Second Amended Complaint must be dismissed in its entirety. Defendants take the position that "federal jurisdiction never attached" at the time the first Complaint was filed and that a plaintiff with Article III standing could not be added by the Second Amended Complaint.

The Court agrees that David Oetting lacks Article III standing to bring the claims in the Second Amended Complaint and will dismiss David Oetting as a party. However, as discussed in the prior section, the Court properly granted leave to amend the Complaint and the Second Amended Complaint added James Oetting as a plaintiff. The Court further concludes that James Oetting has Article III standing to pursue the claims in this case and rejects the argument that David Oetting's lack of standing requires dismissal of the Second Amended Complaint.

### 1. Legal Standard

Article III of the Constitution of the United States provides that a federal court may exercise jurisdiction only where there is an actual case or controversy to be decided. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). As the standing requirement is derived from Article III, it is a threshold inquiry in every case, one for which "[t]he party invoking federal jurisdiction bears the burden" of proof. *Lujan*, 504 U.S. at 561. To meet this burden, the party seeking federal jurisdiction must establish three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (citations and quotations omitted).

Further, named plaintiffs in a putative class action "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

### 2. David Oetting

The Second Amended Complaint asserts claims for damages that arose from harm allegedly caused by Heffler's and the individual defendants' failure to detect and prevent

fraudulent claims on the NationsBank settlement fund. The harm allegedly suffered by the individual plaintiffs and the putative class was a reduction in the amount of the distributions from the settlement fund—whether because of the false claims that defendants allegedly failed to prevent or allegedly fraudulent charges submitted to the fund by the defendants. The parties concede that David Oetting did not cash the checks issued from the settlement fund in the 2004 distribution. The Court thus concludes that David Oetting suffered no injury and lacks Article III standing to bring these claims.

Plaintiffs argue that David Oetting has standing to recover nominal damages. However, nominal damages are not available for the claims in this case: breach of fiduciary duty, accounting malpractice, fraud, and negligence. The Court need not determine at this stage whether Pennsylvania or Missouri law governs the claims in this case because there is no conflict of law on this issue.[4] Under either state's law, David Oetting cannot recover nominal damages and does not have Article III standing on this basis.

---

[4] Actual harm is required to recover under any of plaintiffs' claims in either state:
- Breach of fiduciary duty, *see Henry v. Farmers Ins. Co., Inc.*, 444 S.W.3d 471, 481 (Mo. Ct. App. 2014) ("[N]ominal damages could not be awarded to Appellants on their breach of fiduciary duty claim."); *Mehrtens v. Fiduciary Trust Co. Intern.*, Civil Action No. 2014-92, 2015 WL 7573091, at *7 (Pa. Super. Ct. Jan. 22, 2015) (concluding that plaintiff must prove actual damages as an element of a breach of fiduciary duty claim).
- Accounting malpractice, *see Deutsch v. Wolff*, 994 S.W.2d 561, 572 (Mo. 1999) (holding cause of action for accounting malpractice does not accrue until actual damage occurs); *Robert Wooler Co. v. Fidelity Bank*, 479 A.2d 1027, 1033 (Pa. Super. 1984) (explaining that actual damages are an element of a claim for accounting malpractice).
- Fraud, *see Harris v. Penninger*, 613 S.W.2d 211, 214 (Mo. 1981) ("[F]raud belongs to that class of torts of which pecuniary loss constitutes a part of the cause of action."); *Sands v. Forrest*, 434 A.2d 122, 124 (Pa. Super. 1981) (holding that proof of actual injury is required in a fraud action).
- Negligence, *see Walker Mobile Home Sales, Inc. v. Walker*, 965 S.W.2d 271, 277 (Mo. Ct. App. 1998) ("As damages are an element of a cause of action for negligence, nominal damages cannot be awarded on such a claim."); *Rizzo v. Haines*, 555 A.2d 58, 68 (Pa. 1989) ("The mere breach of a professional duty, causing only nominal damages,

Plaintiffs also argue that David Oetting has standing based on a pending motion in the MDL to reissue the checks from the settlement fund. The Court disagrees that this pending motion suffices to give David Oetting Article III standing in this action. "To sustain a class complaint, a named plaintiff must have 'individual standing when the action was brought . . . .'" *Datascope Analytics, LLC v. Comcast Cable Communs., Inc.*, Civil Action No. 13-608, 2013 WL 217948, at *3 (E.D. Pa. May 17, 2013) (quoting *Davis v. Thornburgh*, 903 F.2d 212, 222 (3d Cir. 1990)). The Court further notes that the motion to reissue checks from the settlement fund may never be granted. Until the motion is granted, the injury remains merely conjectural. *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 43 (3d Cir. 2011) ("[A plaintiff's damages are conjectural when] one cannot describe how the plaintiffs will be injured without beginning the explanation with the word 'if.'" (citations and quotations omitted)). Thus, David Oetting lacks Article III standing and he must be dismissed as a plaintiff.

### 3. James Oetting

At the outset, the Court must address defendants' argument that, because David Oetting lacked standing in 2011 when the first Complaint was filed, "federal jurisdiction never attached." The Court rejects this argument.

As explained previously, the Court properly granted plaintiffs' leave to amend pursuant to Federal Rule of Civil Procedure 15(a). After leave to amend is granted, plaintiff may amend the complaint to correct a jurisdictional defect. *See, e.g.*, *Agostino Ferrari, S.p.A. v. Antonacci*, 858 F. Supp. 478, 480 (E.D. Pa. 1994) (citing *Berkshire Fashions, Inc. v. The M.V. Hakusan II*, 954 F.2d 874, 877 (3d Cir. 1992)) ("[I]t is clear that a party may amend its pleading to state a different jurisdictional basis, and a trial court has jurisdiction to rule on the request for leave to

---

speculative harm, or the threat of future harm . . . does not suffice to create a cause of action for negligence.").

12

amend."); *see also Bensinger v. Denbury Resources Inc.*, Civil Action No. 10-1917, 2013 WL 3353975, at *4 (E.D.N.Y. July 3, 2013) (granting leave to amend to add plaintiff who had standing).[5] While the Court must consider whether subject matter jurisdiction is proper in the first instance, the Court had yet to rule on any dispositive motions at the time the Second Amended Complaint was filed and leave to amend was granted. Thus, James Oetting may be added as a plaintiff in the Second Amended Complaint.[6]

Defendants do not dispute that James Oetting has Article III standing to bring this action. James Oetting cashed the checks issued from the MDL NationsBank settlement fund. The amount of these checks was reduced by the fraudulent claims that allegedly were negligently allowed by defendants and by the allegedly fraudulent amounts charged by the defendants for accounting services. Accordingly, the Court concludes that James Oetting has Article III standing in this case.

### c. Release Clauses in MDL Settlement Fund Distribution Orders

Defendants argue that plaintiffs' claims in this case are barred by release clauses in the orders of the MDL court directing distribution of the NationsBank settlement funds. Defendants

---

[5] *Bass v. Butler*, cited by defendants, is not applicable to this case. 116 F. App'x 376 (3d Cir. 2004). In *Bass*, the Court of Appeals concluded that the district court is not required to substitute an absent class member for the named plaintiff prior to class certification. *Id.* at 385. That case did not involve, as here, the question whether a plaintiff could be added in an amended complaint filed with leave of the court pursuant to Rule 15.

[6] The Court concludes that James Oetting's claims would relate back to the date of the first Complaint. The relation back of claims by additional plaintiffs in a putative class action is governed by Rule 15(c)(1)(B). *In re Community Bank of N. Va.*, 622 F.3d 275, 297-98 (3d Cir. 2010) ("[T]he plaintiff must demonstrate only that his or her . . . claims 'arose out of the conduct, transaction, or occurrence set out in the original pleading." (citations and quotations omitted)); *see also Bensinger*, 2013 WL 3353975, at *4 ("[N]ew plaintiffs [relate back] where defendants had fair notice of the new plaintiffs' claims and would not suffer undue prejudice."). James Oetting's claims clearly arise out of the same transaction or occurrence as the claims in the first Complaint. Thus, the addition of the new plaintiff did not cause unfair surprise. Moreover, given that the case has been in suspense almost since filing, defendants suffer no prejudice through the addition of a plaintiff at this juncture.

argue that these release clauses are general releases of all future liability. The Court rejects this argument and concludes that the release language in the orders does not cover the claims made in the Second Amended Complaint.

In the June 14, 2004, Order dispersing the NationsBank settlement funds, the MDL court ordered that:

> all persons involved in the review, verification, calculation, tabulation or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund are released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order.

Order, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. June 14, 2004), Doc. No. 630. The same language was included in a subsequent Order approving further distribution of settlement funds. Order Approving Distribution of Class Settlement to Supplemental Claims, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. Feb. 4, 2005), Doc. No. 647. Several years later, Judge Jackson, in response to a motion filed by lead class counsel for the NationsBank class, issued a Memorandum and Order clarifying the scope of the release clauses in the orders:

> A plain reading of its June 14, 2004 order indicates that the paragraph in question is primarily concerned with releasing those involved in the processing of submitted claims from liability relating to any action brought by Class Members, or other individuals, who felt that the amount of money they received was inadequate or incorrect. Indeed, the sentence containing the release of liability language also states that Class Members are barred from making any claim against the 'released persons' beyond the amount they were entitled to under the settlement agreement. Further, release of liability relates only to claims 'arising out of the involvement' in the process of submitted claims. Implicit in this language is a requirement that the involvement in this case be lawful involvement. In other words, those involved in this case are protected from claims arising out of their lawful performance of the duties assigned to them through this Court's orders and through the settlement agreement. Clearly, any unlawful activity would

14

be outside the scope of any lawful 'involvement' in the case, and would not be protected by any language in the June 14, 2004 order.

*In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. Oct. 22, 2009), Doc. No. 722.

The release clauses are contained in judicial orders, but the parties agree that Missouri contract law principles should govern the determination of their scope and application to the claims in this case. Under Missouri law, "Interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement, and the primary rule is that the intention of the parties shall govern." *Andes v. Albano*, 853 S.W.2d 936, 941 (Mo. 1993) (en banc). "Any question regarding the scope and extent of the release is to be resolved . . . in light of all the surrounding facts and circumstances under which the parties acted." *Id.* "[L]anguage that is plain and unambiguous . . . will be given full effect within the context of the agreement as a whole . . . ." *Id.* If a contractual provision uses phrases such as "any claims, known or unknown," this language constitutes a general release and must be given effect absent evidence of fraud, accident, misrepresentation, mistake, or unfair dealings. *Id.*; *see also Blackstock v. Kohn*, 994 S.W.2d 947, 954 (Mo. 1999) (concluding that clause releasing defendant from "any and all claims, causes of action or liability of any sort whatsoever for any sums due arising from the sale, transfer, ownership, or use of the Docks or from any other transaction between" plaintiffs and defendants constituted a general release).

The Court rejects defendants' argument that the release clause in the MDL court's distribution orders is a general release that applies to the claims in this case. The release language must be construed in the context of the distribution orders as a whole and the facts and circumstances under which the parties agreed to the form of the orders. The language was included in a form of order attached to the joint motion for distribution and was agreed to by

counsel for all of the MDL parties. Plaintiffs' Joint Motion for Approval of Distribution of Class Settlement Fund, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. May 13, 2004), Doc. No. 616, Ex. 5. The joint motion was granted and the agreed-upon order was issued by the MDL court. The same release language was used in subsequent distribution orders.

At the time of the 2004 distribution orders, the MDL court and counsel for the parties to the MDL were concerned with protecting the finality of the settlement agreement. The release clauses in the orders achieved this purpose by preventing attempts to re-litigate the substantive issues underlying the settlement *of the MDL actions* or to challenge the amount allocated to individual claimants under the settlement agreement. Accordingly, the orders bar a claimant from seeking any recovery against the Net Settlement Fund beyond the amount allocated to the claimant pursuant to the order. Any hypothetical recovery in this case will not affect the MDL settlement because it will come directly from Heffler and the individual defendants.[7] The release language does not, in context, release Heffler and the individual defendants from tort claims brought against them individually, as opposed to claims seeking recovery from the settlement fund itself.

This conclusion is in accordance with the interpretation of the MDL court's clarification Memorandum, which concluded that the purpose of the release clauses was to bar claims brought by class members "who felt that the amount of money they received was inadequate or incorrect." Plaintiffs in this case are not advancing claims based on a calculation error, negligent or otherwise, by Heffler, but instead based on alleged failure to detect fraudulent claims made by one of Heffler's employees. Thus, plaintiffs do not allege that the amount of money received by

---

[7] The MDL court has already denied Heffler's motion for leave to intervene in the MDL to participate in the ongoing dispute over distribution of the remaining settlement funds on the ground that the releases do not give Heffler a "legally protectable interest" in those funds. *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. June 24, 2013), Doc. No. 802.

16

a particular individual claimant was incorrect, but instead that the *entire class* was defrauded due to the actions of Heffler.

Furthermore, the MDL court concluded that "unlawful activity" would be outside the scope of the release clauses in the distribution orders. Clearly, the actions of Penta in making false claims and defrauding the class were unlawful and Penta himself would be liable despite the release clauses. Heffler takes the position that because the claims for *respondeat superior* liability for the criminal actions of Penta were dismissed on the ground that Penta acted outside the scope of his employment, Heffler's actions must have been "lawful" and within the scope of the release clauses. The Court disagrees.

The Second Amended Complaint alleges that Heffler and the individual defendants failed to stop criminal activity which ultimately led to plaintiffs' harm. Clearly, it was not in the contemplation of class counsel, defendants' counsel, and the MDL court at the time of the joint motion, or the issuance of the orders containing the release language, that Heffler or the firm's partners would be absolved from all liability for negligently allowing a Heffler employee to defraud the class of millions of dollars or for submitting fraudulent bills to be paid from the settlement fund. Thus, the Court concludes that the release clauses in the distribution orders are not general releases and further that they do not apply to the claims in the Second Amended Complaint.

### d. Fraud Claim

Individual defendants Bancroft and Sincavage argue that plaintiffs' fraud claim (Count III of the Second Amended Complaint) must be dismissed for failure to comply with Federal Rule of Civil Procedure 9(b). The Court rejects this argument.

Federal Rule of Civil Procedure 9(b) provides "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* Plaintiffs must "plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

The Court does not decide, at this stage, whether Pennsylvania or Missouri law governs the fraud claim because the elements of the claim are substantially similar in both states for purposes of the Rule 9(b) analysis. Under Pennsylvania law, the elements of fraud are:

> (1) a representation; (2) material to the transaction; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another to rely on the misrepresentation; (5) justifiable reliance on the misrepresentation; and (6) injury proximately caused by the reliance on the misrepresentation.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). Under Missouri law, the elements of fraud are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC, v Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. 2010) (en banc).

The Second Amended Complaint alleges that Bancroft and Sincavage submitted bills to the MDL court attached to motions for payment of administrative fees. Second Am. Compl. ¶ 53; *see, e.g.*, Order, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. Oct. 26, 2007), Doc. No. 690 (approving Heffler's motion for administrative expenses). Plaintiffs allege that Bankcroft hired Penta knowing that he did not have a high school diploma or an

accounting background, and that Sincavage was aware of Penta's lack of qualifications. Second Am. Compl. ¶¶ 48, 53. Heffler's proposal for services, submitted to class counsel and the MDL court, stated that certain hourly rates would be charged for services performed by individuals holding certain positions. Second Am. Compl. ¶ 47; Ex. A, at 9. The Second Amended Complaint alleges that Heffler, through Bankcroft and Sincavage, knowingly billed Penta's services at a higher rate, as a Senior Accountant, than the position for which Penta was qualified, with the knowledge that Penta was not qualified. Second Am. Compl. ¶¶ 49, 53. MDL class counsel, as representatives of the named plaintiffs and the putative class in this case, and the MDL court relied on these alleged misrepresentations in granting Heffler's motions for payment of fees. Second Am. Compl. ¶¶ 53-54. Thus, the alleged misrepresentations caused harm to the class by diminishing the pool of settlement funds allocable to the class. *Id.* The Court concludes that plaintiffs have sufficiently pled a fraud claim for purposes of Rule 9(b).

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant defendants' Motions to Dismiss in part and dismiss the claims brought on behalf of plaintiff David Oetting for lack of Article III standing. Defendants' Motions to Dismiss are denied in all other respects. An appropriate order follows.