### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES OETTING, individually, and on behalf of all others similarly situated, | CIVIL ACTION—LAW |
| Plaintiff | NO. 2:11-cv-04757-JD |
| v. | ORAL ARGUMENT REQUESTED |
| HEFFLER, RADETICH & SAITTA, LLP, *et al*. | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### I.    INTRODUCTION AND BACKGROUND

Plaintiff James Oetting seeks certification of a class in his lawsuit against Heffler,

Radetich & Saitta, LLP and individual Heffler partners. The merits of this case are in dispute,

and Defendants deny any suggestion in Plaintiff's memorandum that Defendants engaged in

wrongful conduct or breached any duties to Plaintiff or the putative class. Defendants do not,

however, dispute that common legal and factual issues predominate. Defendants oppose class

certification because Plaintiff cannot show he is an adequate class representative as required by

Fed. R. Civ. P. 23(a)(4). In the alternative, Defendants seek clarification of the class definition.

This lawsuit arises from Heffler's administration of the $490 million settlement fund in

*In re BankAmerica Corp. Sec. Litigation*, No. 4:99-MD-1264-CEJ (E.D. Mo.), and, specifically,

former Heffler employee Christian Penta's involvement in a sophisticated scheme that siphoned

approximately $5.87 million from the NationsBank Class's share of the settlement.[1] David

---

[1] As set forth in the criminal indictment of Christian Penta and his fellow fraudsters (who were not Heffler employees), "[t]o successfully perpetrate this scheme, [the fraudsters] took elaborate steps to pursue these fraudulent claims and produce the necessary records to support them.  In

Oetting, James's brother and a lead plaintiff for the NationsBank Class, filed the lawsuit in 2011.[2] James Oetting was added as a plaintiff in September 2015,[3] after the Eighth Circuit held David Oetting lacked standing in a legal malpractice case against the NationsBank Class's former counsel arising out of the same issues as this case.[4] In December 2015, this Court dismissed David Oetting from this case after concluding he "suffered no injury and lacks Article III standing to bring these claims."[5] As the Oettings' deposition testimony demonstrates, however, David Oetting still controls the case. James Oetting has little, if any,  knowledge about the case other than what his brother tells him.

As set forth below, the Third Circuit has emphasized the overriding public interest in settling class action litigation. A class representative's duty of vigorous representation includes a fiduciary duty to represent the class effectively in settlement negotiations. The history of the underlying *BankAmerica* Action, which was settled 14 years ago, and this case, which has been pending for five years, sheds serious doubt on whether the Oettings can or will satisfy that duty. Defendants outline below David Oetting's prolonged personal campaign to undo the

---

particular, they created fake corporations, using false names for executive personnel, with addresses in the United States and in foreign countries. They opened bank accounts and established virtual offices for the fake corporations in the United States and in foreign countries, with mailing addresses and telephone numbers, and used professional office services to retrieve the mail and take telephone messages. They then created fake brokerage account statements and other financial documents that showed the fake company's ownership in the securities necessary to share in the class action settlement funds." Indictment at 7 (Exh. 1).

[2] *See* Docket Sheet (Doc. 1). James and David Oetting are brothers.  *See* Dep. of J. Oetting at 8. Cited pages from James and David Oetting's February 16 and 17, 2016 depositions on class issues are included, respectively, in Exhs. 2 and 3.

[3] *See* Second Amended Complaint (SAC) (Doc. 35, filed Sept. 3, 2015).

[4] *Oetting v. Norton*, 795 F.3d 886, 890 (8th Cir. 2015).

[5] *Oetting v. Heffler, Radetich, & Saitta, LLP*, 2015 U.S. Dist. LEXIS 168965, at *16 (E.D. Pa. Dec. 16, 2015).

*BankAmerica* settlement and litigate various related claims. Under the case law, the Oettings are free to pursue their personal interest in litigation, but refusal to compromise is not an appropriate attitude for a class representative. Should the Court conclude, however, that the record is not sufficient to rule on Plaintiff's adequacy, Defendants respectfully request that the Court refer this motion to Magistrate Judge Reuter so the record can be developed regarding the parties' settlement positions and whether compromise is possible.

Alternatively, though the Court need not reach this issue if it declines to certify the class, any class should be defined to include only those members of the NationsBank Class that filed claims and are eligible for further distributions in *BankAmerica*. Plaintiff's motion and memorandum do not propose a specific class definition, and the Second Amended Complaint includes a definition different from what Plaintiff's memorandum suggests he is seeking now.

## II.      LEGAL ARGUMENT

### A.      Plaintiff Is Not an Adequate Class Representative

#### 1.      Plaintiff Has the Burden of Proving Adequacy

A proposed class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  As Plaintiff acknowledges, the adequacy requirement tests whether the proposed representative's interests are aligned with those of the putative class. *See* Pl. Mem. at 8 (Doc. 48-1). "If there is a conflict between [the proposed representative's] goals and interests in the case and the goals and interests of the proposed class members, she cannot serve as an adequate class representative." *Real Estate Alliance v. Sarkisian*, 2007 U.S. Dist. LEXIS 70339, *10 (E.D. Pa. Sept. 21, 2007) (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 (1997)).

Plaintiff argues (at page 8) that the challenging party has the burden to prove a proposed class representative is inadequate, but Plaintiff is wrong. Supreme Court precedent establishes

that a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23, including that there is "'*in fact* . . .' adequacy of representation." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (U.S. 2013) (emphasis original; internal citation omitted).[6] The burden of proving adequacy thus rests squarely on Plaintiff, and he cannot satisfy it.

### 2.    A Named Plaintiff Has the Duty to Represent the Class Effectively in Settlement Negotiations

The Third Circuit has repeatedly emphasized the "'overriding public interest in settling class action litigation.'" *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 2015 U.S. App. LEXIS 16841, *7 (3d Cir. Sept. 23, 2015) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)). Both the parties and the Court benefit when disputes are resolved without the costs, delays, and risks of formal litigation. *See, e.g.*, *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

Given the policies favoring settlement, a class representative's duty to "vigorously represent the interests of the class" includes a duty to "represent the class effectively in settlement negotiations." *Sarkisian*, 2007 U.S. Dist. LEXIS 70339, *10. As the Court stated in rejecting the objections of David Oetting and others to the *BankAmerica* settlement, "'[t]he court should not permit representatives, in violation of their fiduciary responsibilities, to place their individual interests ahead of the class's and impede a desirable settlement on behalf of the class.'" *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 703 (E.D. Mo. 2002) (quoting Manual for Complex Litigation (3rd) at § 30.44). As set forth in more detail below, courts in this jurisdiction and elsewhere have found proposed class representatives inadequate when the facts suggest they are more interested in litigating than in resolving the lawsuit. *See, e.g.*,

---

[6] The cases Plaintiff cites at page 8 of his memorandum do not justify ignoring the Supreme Court. The Third Circuit case he cites held that "named plaintiffs bear the burden of showing class eligibility." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). The two district court cases predated the Supreme Court's *Comcast* decision.

*Sarkisian*, *11; *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986) ("an unduly antagonistic litigant, or litigant who bears a grudge against the defendant is not an appropriate class representative"); *Norman, D.D.S., P.C. v. ARCS Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976) (class representative "has the duty to use wise judgment in negotiating and approving a fair and proper settlement at the right time"). *See* below, Section II(A)(5).

###        3.        Despite His Dismissal for Lack of Standing, David Oetting Is Controlling this Case

In December 2015, this Court dismissed David Oetting from this case because he was not injured and therefore lacked standing. That left James Oetting, who was added in September 2015, as the only named Plaintiff. *Oetting*, 2015 U.S. Dist. LEXIS 168965, at *16, 20-21. However, David Oetting continues to control the case. David Oetting testified that he is "still the most knowledgeable person about the whole matter on the face of the earth." D. Oetting dep. at 54 (Exh. 3). He expects to be involved in any discussion regarding settlement. *Id.* at 58-59, 108. He helped prepare the Second Amended Complaint and other pleadings and briefs. *Id.* at 55-57. Asked if he was the "primary drafter," he responded: "I don't know what primary means, but I've certainly been involved with them and often I'll draft the initial thing and then Hilton [his counsel] will look at it and send it back. . . . Whether I'm a client or a lawyer or a co-counsel or an associate or a partner really doesn't matter. The function I'm serving is the same being a lawyer looking at a pleading and bringing to that my knowledge of the situation." *Id.* at 57-58.[7] He also recently filed a complaint against Heffler with the Pennsylvania Department of State, based on the same alleged facts that are the basis for this action. *Id.* at 81-82.

James Oetting testified that he agreed to step in as a named plaintiff sometime within the past six months, at his brother's request. J. Oetting dep. at 31-32 (Exh. 2). Before that, he was

---

[7] David Oetting is a lawyer. *Id.* at 6-7.

aware of the case but was not involved. *Id.* at 26-27. He did not recall reading the Second Amended Complaint before it was filed or before he agreed to join as a Plaintiff, did not recall seeing any pleadings until sometime in December 2015 or January 2016, and was not sure who the individual defendants were or the basis of the claims against them. *Id.* at 27-28, 31-33, 43, 44-50. Even now he is not sure he has read the Second Amended Complaint: "I think I've seen something like it. I can't tell you the exact document." *Id.* at 45. He has not read the exhibits. *Id.* at 73-74. He saw his counsel's retention agreement in January 2016, but did not read it and did not know what fees his brother had agreed to. *Id.* at 41-42, 56-57. Asked what he did to prepare himself to be a class representative, he responded, "Nothing." *Id.* at 29. Asked what he had done in his role as proposed class representative, he testified he had not done anything except talk to his brother about "things he [David Oetting] discovered or things he's looking for" and give him technical help with a disk that contained documents. *Id.* at 33.[8] Neither David nor James Oetting has talked to other putative class members about the case. *Id.* at 42; D. Oetting dep. at 67.

### 4.    David Oetting's History in the *BankAmerica* Action Shows an Unwillingness to Compromise

The *BankAmerica* Action settled in 2002 for $490 million, $333.2 million of which was allocated to the NationsBank Class. *In re BankAmerica Corp. Sec. Litig.*, 227 F. Supp. 2d 1103, 1104 (E.D. Mo. 2002). David Oetting has been fighting the settlement and the NationsBank Class's former counsel (Green Jacobson, PC) ever since. As set forth in more detail below, he has contended over and over again that the settlement was inadequate and that class counsel

---

[8] Defendants acknowledge that the Third Circuit – and this Court – have held that a class representative "need only possess 'a minimal degree of knowledge necessary to meet the adequacy standard.'" *New Directions*, 490 F.3d at 313 (internal citation omitted); *see also In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 213 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002). Defendants point out James Oetting's lack of knowledge to confirm that David Oetting still controls this case, and that James Oetting's adequacy cannot be assessed without also considering his brother's history and motivations.

breached its fiduciary duties, and the district court and Eighth Circuit have repeatedly rejected his arguments. He has also repeatedly sought payments from the NationsBank Settlement Fund for his own firm and lawyers he has retained, but the district court in *BankAmerica* has rejected those efforts as well.

The record makes clear David Oetting is on his own personal crusade. As the Eighth Circuit stated in 2003, when it affirmed the approval of the class settlement, David Oetting was one of a seven-member lead plaintiff group representing the NationsBank Class. The group "owned, collectively, less than one tenth of one percent of the outstanding shares in NationsBank. Institutional investors owned more than forty percent of NationsBank, but no institutional investor came forward to serve as a lead plaintiff." *Kloster v. McColl*, 350 F.3d 747, 749 (8th Cir. 2003). Notice of settlement was sent to "the hundreds of thousands of eligible class members," but only ten objections were filed, none by institutional investors. *Id.*

Following is a summary of David Oetting's history after the *BankAmerica* settlement:

- In 2002, David Oetting and some of the other NationsBank class representatives objected to the *BankAmerica* settlement, claiming it was inadequate and was entered without their knowledge and consent. The Court rejected these arguments and held that the settlement was fair and adequate. *BankAmerica*, 210 F.R.D. at 714; *BankAmerica*, 227 F. Supp. 2d at 1104 (approving final plan of allocation). David Oetting and others appealed and the Eighth Circuit affirmed, noting among other things the district court's view that "Appellants' estimations of the settlement value of the case were so high as to be 'bordering on fantasy'" and concern that Appellants could jeopardize a favorable settlement. *Kloster v. McColl*, 350 F.3d 747, 750 (8th Cir. 2003). The Appellants sought rehearing and rehearing en banc, which the Court denied. *Koehler v. McColl*, 2004 U.S. App. LEXIS 494 (8th Cir. Jan. 9, 2004).

- Later in 2002, David Oetting asked the *BankAmerica* Court to award fees to his law firm for work relating to his objections. The Court refused, stating that the objections "enhanced neither the value of the settlement fund nor the adversarial process" and that Oetting's "interest in seeking to recover from the NationsBank Settlement Fund fees and expenses which far exceed the recovery to which he is otherwise entitled

conflicts with the best interests of the NationsBank class." *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1067-68 & n.10 (E.D. Mo. 2002).

- David Oetting represented one of the other NationsBank class representatives in another lawsuit filed against class counsel in 2004, alleging breach of fiduciary duty in connection with *BankAmerica* settlement. The district court dismissed, holding that the suit was collaterally estopped by approval of the settlement, class counsel had zealously represented the class and achieved an "exceedingly fair settlement," and plaintiff's case was "baseless." *Koehler v. Green*, 2006 U.S. Dist. LEXIS 100730, *18, 22-23, 29-30 (E.D. Mo. Apr. 20, 2006). The Eighth Circuit affirmed, holding that plaintiff "cannot renew his attacks on the quality of the representation or the settlement amount in this collateral action. Nor can he now attempt to divest the attorneys of their court awarded fees." *Koehler v. Brody*, 483 F.3d 590, 599 (8th Cir. 2007) (noting at p. 595 that plaintiff was seeking compensatory damages, disgorgement of attorney fees, and over $2,000,000 in punitive damages).

- After David Oetting learned of the Penta fraud, he asked the *BankAmerica* Court to appoint special counsel to pursue claims against Heffler, arguing that Green Jacobson could not properly represent the class due to its "'close relationship'" with Heffler. The Court denied the motion, saying it found no objective evidence to support David Oetting's "own personal belief that lead counsel is biased in favor of the claims administrator." BOA Doc. 743 (Apr. 12, 2010) (Exh. 4).[9]

- David Oetting ultimately filed his own lawsuits against both Heffler and Green Jacobson. The *BankAmerica* Court dismissed his *respondeat superior* claim against Heffler on the ground that he "failed to allege facts sufficient to support his claim that Penta was acting within the scope of his employment when he participated in a fraudulent scheme to submit false claims to the settlement fund." *Oetting v. Heffler*, 2011 U.S. Dist. LEXIS 80776, *11 (E.D. Mo. July 25, 2011). The Court also dismissed his suit against Green Jacobson, and the Eighth Circuit affirmed on the ground that he lacked standing. *Oetting v. Norton*, 795 F.3d at 887-89. The Eighth Circuit noted this was the fourth appeal of district court orders in the *BankAmerica* litigation. *Id.* at 887. The only challenge on which David Oetting prevailed was his appeal of the district court's decision to distribute surplus NationsBank settlement funds *cy pres. See Oetting v. Green Jacobson, P.C.*, 775 F.3d 1060 (8th Cir. 2015).

- After suing Heffler, David Oetting asked the *BankAmerica* Court to direct Heffler to set aside $25,000 from the NationsBank Settlement Fund to reimburse him for

---

[9] Documents on the public docket of the *BankAmerica* Action are referenced by BOA and their docket number in that case and are attached as exhibits.

litigation expenses, and to allow him and his attorney to continue to submit
statements. The Court denied the request. BOA Doc. 803 (June 24, 2013) (Exh. 5).[10]

- David Oetting continues to pursue claims against Green Jacobson in the firm's
  involuntary bankruptcy proceeding, *In re Green Jacobson, P.C.*, No.15-41404
  (Bankr. E.D. Mo.) (D. Oetting dep. at 47-49). In addition, David Oetting has asked
  the *BankAmerica* Court to reissue the checks he did not cash (without the release
  language contained in every other check). The Court has not ruled on that motion, but
  asked the current NationsBank class counsel to respond to the request for reissuance,
  noting the potential conflict when the class representative seeks funds that would
  "reduc[e] the funds available to all other class members during future distributions."
  BOA Doc. 879 (Sept. 16, 2015) (Exh. 6).

- David Oetting has also repeatedly asked the *BankAmerica* Court to appoint special
  counsel to represent the class in Green Jacobson's bankruptcy proceeding, but the
  Court has refused, saying that "[d]oing so would only needlessly increase the
  attorneys' fees associated with this litigation and drain yet more money from the
  settlement fund." *In re BankAmerica Corp. Sec. Litig.*, 2015 U.S. Dist. LEXIS 69550,
  *10 (E.D. Mo. May 29, 2015); *see also In re BankAmerica Corp. Sec. Litig.*, 2015
  U.S. Dist. LEXIS 74909 (E.D. Mo. June 10, 2015) (denying motion to reconsider); *In
  re BankAmerica Corp. Sec. Litig.*, Doc. 856 (July 22, 2015) (Exh. 7) (denying David
  Oetting's third motion to appoint special bankruptcy counsel to represent the class or
  to allow him to represent the class pro se).

At his February 17, 2016 deposition in this case, 14 years after the *BankAmerica* Court
approved the class settlement, David Oetting still refused to call it a settlement, insisting instead
on the term "arrangement." D. Oetting dep. at 22-23, 25-27. He even suggested something was
"amiss" with Judge Nangle, the judge who approved the settlement, including the possibility of
an improper relationship between the judge and class counsel. *Id.* at 92-94.[11] According to him,

---

[10] David Oetting's agreement with his counsel provides that he is responsible for costs of suit but
that he and his counsel "will seek court approval to have expenses and costs of litigation
advanced and paid for from the NationsBank settlement fund." Retention Agreement, ¶¶ 6-8
(Jan. 31, 2011) (Exh. 8).

[11] Plaintiff's counsel blocked him from further explaining his opinion on the record. *Id.* at 94.

if he could figure out a way to mount more challenges to the 2002 *BankAmerica* settlement he would, "but I intend to write a book about it."  *Id.* at 26.

> **5.     Plaintiffs Who Will Not Compromise Should Not Be Allowed to Represent a Class**

The history of the *BankAmerica* Action illustrates starkly why David Oetting, and by extension his brother, are unlikely to represent a class effectively in settlement negotiations in this case. As set forth above, the Third Circuit has emphasized the public policy favoring settlement of class action cases. In addressing the district courts' fiduciary duty to assess whether proposed settlements are reasonable and adequate, the Third Circuit has cautioned the courts (and, by implication, a class) to "guard against demanding too large a settlement based on [their] view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *GMC Pick-Up*, 55 F.3d at 806.

In accordance with these principles, courts in this jurisdiction and elsewhere have denied certification where the facts suggest the proposed class representative will not represent the class effectively in settlement negotiations. In *Sarkisian*, cited above, a court in this district refused to certify a defendant class when the facts "suggest[ed] that [the proposed representative's] goals for this litigation stretch beyond simply determining [legal issues in the case]." *Sarkisian*, 2007 U.S. Dist. LEXIS 70339, at *11. The *Sarkisian* Court's reasoning is equally applicable to this case. "To an impartial observer, this appears to be a commercial dispute that might be settled for a reasonable sum per class member." David Oetting's conduct "suggests that [he], and the legal team that represents [him] . . ., would be unable to represent the class effectively in settlement negotiations." *Id.* David Oetting thus could not establish adequacy, and his brother, who is not independent from him, cannot either. *See id.; Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986).

In *Kamerman*, the facts resemble those here. The plaintiff sought to maintain a class action originally filed by his father, alleging fraud and breach of fiduciary duty in connection with a merger. The father had been involved in legal disputes with defendants for years. The Court concluded that the son stood in the father's shoes and could not adequately represent the class, since it was "conceivable" that the "long family history of prosecution of these defendants would override his amenability to negotiating with defendants, although beneficial to the class." *Id.* The Court explained that even if the father had "quite legitimate reasons for his antagonistic stance, it is not an appropriate attitude for a class representative. . . . 'Besides the oft quoted duty of a class representative to prosecute the action vigorously, he also has the duty to use wise judgment in negotiating and approving a fair and proper settlement at the right time.'" *Id.* (internal citations omitted).

### 6.    Prolonging this Litigation Would Not Serve the Interests of the Putative Class

For the reasons set forth above, Plaintiff in this case should not be allowed to represent the class, and certification should be denied. If the Court concludes the record and the case law are not sufficient to rule on Plaintiff's adequacy as a class representative, Defendants respectfully request that the Court refer this motion to Judge Reuter to develop the record on settlement issues, including the parties' positions and the factors the Third Circuit has directed courts to apply when assessing class action settlements. Factors which could be explored include the following.[12]

The complexity, expense, and likely duration of the litigation and the risks of establishing liability: Further litigation will be complex and expensive. While parts of Plaintiff's brief read as

---

[12] These are some of the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

if he thinks liability is clear,[13] it absolutely is not. The *BankAmerica* Court has already rejected

the claim "that Penta was acting within the scope of his employment when he participated in a

fraudulent scheme to submit false claims to the settlement fund." *Oetting v. Heffler*, 2011 U.S.

Dist. LEXIS 80776, *11. The issues in dispute on the remaining claims are substantial, including

whether any of the Defendants engaged in wrongful conduct, whether they caused any injury to

the putative class, and whether the putative class is entitled to any recovery from Defendants.

The ability of the defendants to withstand a greater judgment: As the Court is aware,

Defendants do not have insurance to pay a settlement or recovery, and Heffler has been required

to pay fees and costs for both this action and litigation with its insurer. *See Camico Mut. Ins. Co.*

*v. Heffler, Radetich & Saitta LLP*, 587 Fed. App'x 726, 731 (3d Cir. 2014) (affirming ruling that

Heffler's coverage was limited to $100,000 and requiring Heffler to repay $87,531.76 to its

insurer for fees and costs in the Oetting action).[14]

Issues relating to damages and the best possible recovery: This case raises substantial

issues regarding who would benefit from a recovery. According to the Second Amended

Complaint, the fraud loss was approximately $5.87 million out of the $333.2 million

NationsBank Settlement Fund. SAC ¶¶ 14, 24 (Doc. 35). Fourteen years have passed since the

*BankAmerica* settlement, and the class list and contact information are stale.  Additionally,

many class members are mutual funds and other institutional investors who held stock on behalf

of beneficial owners, and beneficial ownership changes regularly. Given these factors, it may be

---

[13] *See, e.g.*, Pl. Mem. at 6, 7, 11-12.

[14] James Oetting testified that he knows of the limits on Heffler's insurance coverage, and his position on settlement would not be affected if he knew Heffler did not have the financial means to pay a judgment. J. Oetting dep. at 37-38 (pursuing Heffler because "It's the right thing"). He also testified he does not care if this case puts Heffler out of business, and does not know if that would benefit the class. *Id.* at 78.

difficult or impossible to get payment to people who were actually harmed.[15] In contrast, David

Oetting's agreement with his counsel – an agreement James Oetting adopted but did not read (J.

Oetting dep. at 56-57) – provides for counsel fees of 40% of the first $3,000,000 of gross

recovery, $33^1/_3$% of the next $1,000,000, 25% of the next $1,000,000, and 45% of anything over

$5,000,000. Retention Agreement, ¶ 7 (Exh. 8). David Oetting testified that if the class

recovered $6 million, his counsel would get 37% (i.e., more than $2.2 million), and would be

"underpaid" at that. D. Oetting dep. at 66.[16]

---

[15] These factors were part of the basis for the *BankAmerica* district court's decision to distribute remaining settlement funds *cy pres*. *In re Bank of Am. Corp. Secs. Litig.*, 2013 U.S. Dist. LEXIS 88133, *12 (E.D. Mo. June 24, 2013). In reversing that decision, the Eighth Circuit held that the possibility that the distribution would not go to those actually harmed did not give the court "power to confiscate the settlement proceeds." *Oetting*, 775 F.3d at 1065. That does not mean, however, that lack of benefit to those harmed should not be a factor in assessing the reasonableness of pursuing litigation and the settlement value of the case.  As set forth in the Second Amended Complaint, the Penta fraud affected two other class actions as well (SAC ¶ 14). In one of those cases, the court approved class counsel's decision not to pursue claims relating to the fraud. Order, *In re NASDAQ Market-Makers Antitrust Litig*, 94 Civ. 3996 (S.D. N.Y. June 23, 2010 (Exh. 9). In the other, the court approved a settlement three years ago. Order, *In re Cendant Corp.*, No. 98-1664 (D.N.J. Apr. 23, 2013) (Doc. 1825) (Exh. 10).

[16] "Courts are properly concerned when a class representative is or appears to be prosecuting a class action for the benefit of class counsel rather than for the benefit of the class." 5-23 Moore's Federal Practice - Civil § 23.25(2)(vi). While this issue normally arises when counsel and the named plaintiff have a family or business relationship, the great disparity between the benefit to counsel and the benefit to injured parties should be considered in assessing adequacy, particularly since Plaintiff did not even know what the fee agreement was. *See generally, e.g.*, *In re BankAmerica*, 228 F. Supp. 2d at 1068 n.10 (describing conflict of interest concerns raised by David Oetting's application for fees for his law firm); *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 328-30 (N.D. Ill. 1993) (certification denied where plaintiff's interest in his counsel's goodwill created a conflict of interest, even if plaintiff did not expect to share in attorney fees); *In re Cendant Corp. Litig.*, 264 F.3d 201, 265-66 (3d Cir. 2001) (in case addressing adequacy under the PSLRA, Third Circuit noted that "one of a lead plaintiff's most important functions is to 'select and retain' lead counsel," and a proposed lead plaintiff might not be adequate if "had negotiated a clearly unreasonable fee agreement with its chosen counsel"; citing a district court's refusal "to recognize a movant as the presumptive lead plaintiff because the court was of the view that the retainer agreement between it and its chosen counsel, which 'capped' counsel's fees at $33^1/_3$% of the class's total recovery, was 'not the result of hard bargaining'") (quoting *Raftery v. Mercury Fin. Co.*, 1997 WL 529553, at *2 (N.D. Ill. Aug. 15, 1997)).

### B.     Plaintiff Has Not Clearly Defined the Class

Neither Plaintiff's motion nor his supporting memorandum contains a specific class definition. On page 1 of his memorandum he states that "the class sought to be certified is essentially the same class that was certified fifteen years ago" in *BankAmerica*.  On page 2, he states that "the facts and the law are common to all members of the class of NationsBank who filed claims and are eligible for additional distributions," and on page 5, that he seeks to represent "thousands of claimants that received the first distribution in July of 2004 in the MDL and cashed their checks." The Second Amended Complaint, however, which David Oetting filed before he was dismissed for lack of standing, defines the proposed class to include "all the members of the NationsBank classes (a) who were entitled to receive a distribution from the Action in 2004; (b) who have received a distribution at any time from the Action and (c) who are yet to receive a distribution from the Action." SAC ¶ 31 (Doc. 35). Defendants submit that a class should not be certified, but if a class is certified, the appropriate definition is what Plaintiff suggested on page 2 of his Memorandum: all members of the NationsBank class who filed claims and are eligible for additional distributions in the *BankAmerica* Action.

## III.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny Plaintiff's Motion for Class Certification or, in the alternative, define the class as set forth above.

Respectfully submitted,

Dated:  February 29, 2016         *s/ Patricia M. Hamill*
                                  Patricia M. Hamill, Esquire (I.D. No. 48416)
                                  Timothy M. Stengel, Esquire (I.D. No. 314573)
                                  CONRAD O'BRIEN, PC
                                  1500 Market Street
                                  Centre Square, West Tower, Suite 3900
                                  Philadelphia, PA 19102
                                  215.864.9600
                                  *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the foregoing Defendants' Memorandum in Opposition to Plaintiff's Motion for Class Certification  was served, via the Court's electronic filing system, upon all counsel registered to receive electronic notices.

                                          By:      <u>   s/ *Patricia M. Hamill*     </u>

Dated:  February 29, 2016