**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES OETTING, Individually and on behalf of all others similarly situated,** **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **HEFFLER, RADETICH & SAITTA, LLP, EDWARD J. SINCAVAGE, EDWARD J. RADETICH, JR., and MICHAEL T. BANCROFT,** **Defendants.** | **NO.  11-4757** |

**DuBois, J.**                                                        **March 23, 2016**

## M E M O R A N D U M

### I.    INTRODUCTION

This case involves claims asserted by plaintiff James Oetting on behalf of himself and a putative class of similarly situated individuals who received payments from a settlement fund in a long-running multidistrict litigation in the United States District Court for the Eastern District of Missouri. Plaintiff seeks damages from defendants, Heffler, Radetich, & Saitta, LLP ("Heffler"), the settlement claims administrator appointed in that case, and three partners of that firm, for harm suffered by the class due to fraudulent claims made on the settlement fund by a former Heffler employee that were authorized by defendants. Plaintiff asserts claims for negligence, accountant malpractice, breach of fiduciary duty, and fraud.

Presently before the Court is plaintiff's Motion for Class Certification. For the reasons that follow, the Court grants the Motion and certifies the following class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3):

All individuals and entities who are or were members of one of the NationsBank classes in *In re BankAmerica Securities Litigation*, Multidistrict Litigation Number 1264, in the United States District Court for the Eastern District of

Missouri, who (1) filed valid claims for distribution(s) from the NationsBank settlement fund, (2) received payment on their claims from the NationsBank settlement fund, and (3) are eligible for any additional distributions from the NationsBank settlement fund.

## II.      BACKGROUND

This recitation of the facts of this case is taken from the Memorandum and Order dated December 16, 2015, granting in part and denying in part defendants' Motions to Dismiss. *Oetting v. Heffler*, 2015 WL 9190629 (E.D. Pa. Dec. 16, 2015). The facts of this case relevant to the Rule 23 analysis, as set forth in plaintiff's Second Amended Complaint and the parties' briefs on the Motion for Class Certification, are not in dispute.

This case arises out of securities litigation following a merger between BankAmerica Corporation ("BankAmerica") and NationsBank. On October 16, 1998, the first of numerous class actions was initiated against BankAmerica. Second Am. Compl. ¶ 1. The Multi-District Litigation Panel issued a transfer order on February 12, 1999, consolidating all cases relating to the merger in the Eastern Division of the United States District Court for the Eastern District of Missouri. Second Am. Compl. ¶ 2. Judge John F. Nangle was named transferee judge. Judge Carol E. Jackson succeeded Judge Nangle on November 20, 2008, following his death. *Id.* The multi-district litigation, which is still ongoing, is identified as *In re BankAmerica Corp. Securities Litigation*, 99-md-1264 (E.D. Mo.) ("the MDL").

By Order dated July 6, 1999, Judge Nangle certified four classes for litigation: (1) the NationsBank Holder Class, (2) the NationsBank Purchaser Class, (3) the BankAmerica Holder Class, and (4) the BankAmerica Purchaser Class. Second Am. Compl. ¶ 3. Plaintiff James Oetting was a member of the NationsBank Holder Class. That NationsBank Holder Class was defined as:

[A]ll common and preferred shareholders of NationsBank corporation who were entitled to vote on the merger of NationsBank and Old BankAmerica or who held their shares in NationsBank as of the close of business on September 30, 1998.

*In re BankAmerica Corp. Securities Litigation*, MDL No. 99-1264, 1999 WL 33590875, at *1

(E.D. Mo. July 6, 1999).

The NationsBank Purchaser Class was defined as "all purchasers of NationsBank securities between August 4, 1998, and September 30, 1998." *Id.* Excluded from both classes were:

> (i) [T]he defendants, (ii) New BankAmerica, its subsidiaries and affiliates and in its own right and as the successor in interest of Old BankAmerica and NationsBank, (iii) the officers and directors of New BankAmerica and Old BankAmerica and NationsBank, (iv) members of the immediate families of any of the defendants, (v) any entity in which any of the defendants have a controlling interest, and (vi) the legal representatives, heirs, successors, predecessors in interest, affiliates or assigns of any of the defendants.

*Id.* at *2.

Judge Nangle approved a settlement between the MDL defendants and all four of the MDL classes by Order dated September 20, 2002. Second Am. Compl. ¶ 24. Under the terms of the settlement agreement, the MDL defendants agreed to pay $490 million to the class members, with $333.2 million allocated to a combined NationsBank class and $156.8 million allocated to a combined BankAmerica class. *Id.*

Following submission of a proposal to class counsel, Heffler was appointed by the MDL court as the Claims Administrator for the settlement. Second Am. Compl. ¶¶ 4–9, 25–26. As Claims Administrator, Heffler was responsible for publicizing the settlement, receiving and reviewing submitted claims, identifying valid and invalid claims, and distributing the settlement proceeds to valid claimants. Second Am. Compl. ¶ 25–26. The individual defendants in this case

were partners at Heffler during the time that the firm oversaw distribution of the MDL settlement funds. Second Am. Compl. ¶ 12.

On May 13, 2004, lead counsel for the NationsBank class filed a motion for partial distribution of the NationsBank settlement fund. Second Am. Compl. ¶ 29; Plaintiffs' Joint Motion for Approval of Distribution of Class Settlement Fund, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. May 13, 2004), Doc. No. 616. In support of that motion, counsel submitted an affidavit from defendant Sincavage stating, *inter alia*, that Heffler had examined and calculated all claims forms to determine that they were properly completed, signed, and documented. Second Am. Compl. ¶ 29.  By Order dated June 14, 2004, Judge Nangle granted the motion and approved partial distribution of the settlement funds in accordance with the motion and the attached affidavit from Sincavage. *Id.*; Order, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. June 14, 2004), Doc. No. 630. James Oetting submitted claims, received distributions from the settlement fund, and "cashed all checks issued to him." Second Am. Compl., at 1.

Prior to the distribution of settlement funds authorized by the June 14, 2004, Order of the MDL court, a then-employee of Heffler, Christian Penta, submitted to Heffler fraudulent claims on the NationsBank class settlement fund.[1] Second Am. Compl. ¶ 28. Plaintiff alleges that the distribution included "payment(s) of over $5.87 million based on false claims submitted by Penta and his co-conspirators." Second Am. Compl. ¶ 30.

---

[1] In 2008, after the fraud was uncovered, the grand jury issued an indictment against Penta and four co-conspirators on charges including mail fraud, wire fraud, and tax evasion. Penta and his conspirators were accused of making false claims on three separate class action settlement funds managed by Heffler, including the *In re BankAmerica* fund. Indictment, *United States v. Penta et al.*, Criminal Action No. 08-550 (E.D. Pa. Sept. 11, 2008) (Savage, J.). Penta subsequently pled guilty to mail fraud, wire fraud, and filing a false tax return, and was sentenced to sixty months imprisonment and ordered to pay $19.571 million in restitution.

After discovery of the fraud, former plaintiff David Oetting filed this lawsuit in the Eastern District of Missouri on behalf of a putative class of NationsBank settlement claimants. Complaint, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. Feb. 8, 2011). The Complaint named Heffler as the sole defendant, and included claims for breach of fiduciary duty, "accountant malpractice," and *respondeat superior* liability based on the conduct of its former employee, Penta. *Id.* By Order dated July 25, 2011, Judge Jackson dismissed the *respondeat superior* claim on the ground that it failed to state a claim as a matter of Missouri tort law because Penta acted outside of the scope of his employment. Memorandum and Order, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. July 25, 2011), Doc. No. 18. By Order that same date, Judge Jackson transferred the case for the convenience of the parties and witnesses to this Court on Heffler's motion pursuant to 28 U.S.C. § 1404(a). Memorandum and Order, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. July 25, 2011), Doc. No. 19.

Following the transfer, on August 16, 2011, then-plaintiff David Oetting filed the First Amended Complaint. Heffler filed an Answer to the First Amended Complaint on September 13, 2011. By agreement of the parties, by Order dated February 8, 2012, this case was placed in the Court's Civil Suspense File pending the outcome of litigation between Heffler and its liability insurance carrier in this District.

The insurance coverage case was also assigned to the undersigned Judge. In a Memorandum and Order dated June 27, 2013, the Court granted the motion of Heffler's insurer for summary judgment and issued a declaratory judgment capping Heffler's insurance coverage in this case at $100,000 under a sub-limit in Heffler's insurance policy for "misappropriation, misuse, theft, or embezzlement of funds." *CAMICO Mutual Ins. Co. v. Heffler, Radetich, &*

5

*Saitta, LLP*, Civil Action No. 11-4753, 2013 WL 3481527 (E.D. Pa. June 28, 2013). That

decision was affirmed on appeal by the United States Court of Appeals for the Third Circuit.

*CAMICO Mutual Ins. Co. v. Heffler, Radetich, & Saitta, LLP*, 587 F. App'x 726 (3d Cir. 2014).

Once the insurance coverage dispute was resolved, the case remained in the Civil

Suspense File at the request of the parties pending the outcome of other related litigation in the

Eastern District of Missouri. Specifically, the parties requested that the case remain in the Civil

Suspense File until final disposition of the remaining MDL settlement funds and pending the

outcome of litigation between David Oetting and MDL lead plaintiffs' counsel.[2]

By Order dated August 21, 2015, upon consideration of a joint status report submitted by

the parties, after a telephone conference on that date, the Court transferred the case from the

Civil Suspense File to the Court's active docket. The Court further ordered that "[p]laintiff is

granted leave to file and arrange for service of an amended complaint on or before September 5,

2015."

David Oetting and James Oetting filed their Second Amended and Restated Complaint on

September 3, 2015. The Second Amended Complaint includes five separate claims for relief: a

claim for breach of fiduciary duty against Heffler (Count I), a claim for "accountant malpractice"

against Heffler (Count II), claims for fraud against Bancroft and Sincavage (Count III), a claim

for negligence against Radetich ("Count VI" [sic]), and claims for negligence against "all

---

[2] The MDL settlement funds have not been fully dispersed. In September 2013, the MDL court
approved distribution of remaining NationsBank settlement funds by *cy pres*. *See In re
BankAmerica Corp. Securities Litig.*, 775 F.3d 1060, 1062 (8th Cir. 2015). However, the United
States Court of Appeals of the Eighth Circuit vacated the *cy pres* award and remanded for further
proceedings. *Id.* at 1067. This issue is still being litigated in the MDL as of the date of this
Memorandum.

    David Oetting's suit against class counsel for the NationsBank class was dismissed on the
ground that Oetting lacked Article III standing. *Oetting v. Green Jacobson, P.C.*, Civil Action
No. 13-1148, 2014 WL 942952, at *2–3 (E.D. Mo. Mar. 11, 2014). This decision was affirmed
on appeal on August 4, 2015. *Oetting v. Norton*, 795 F.3d 886, 890 (8th Cir. 2015).

defendants" ("Count VII" [sic]). The Second Amended Complaint asserts these claims on behalf of individual plaintiffs David Oetting and James Oetting, and on behalf of "a class of all persons similarly situated, who are defined as all members of the NationsBank classes (a) who were entitled to receive a distribution from the [MDL] Action in 2004; (b) who have received a distribution at any time from the [MDL] Action and [sic] (c) who are yet to receive a distribution from the [MDL] action."

On October 1, 2015, Heffler filed a Motion to Dismiss. The individual defendants filed a separate Motion to Dismiss on that date. By Memorandum and Order dated December 15, 2015, the Court granted in part and denied in part defendants' Motions to Dismiss. The Court concluded that David Oetting lacked Article III standing to pursue claims in this case because he did not cash the checks issued from the MDL settlement fund and the Court dismissed David Oetting from the case with prejudice. However, the Court concluded that James Oetting was properly added as a plaintiff by the Second Amended Complaint and that James Oetting had Article III standing. The Court denied the Motions to Dismiss in all other respects.

On January 5, 2016, remaining plaintiff James Oetting filed a Motion for Class Certification. Following limited discovery, including the deposition of both David Oetting and James Oetting, Heffler and the individual defendants filed a Response in Opposition to the Motion on February 29, 2016. In that Response, defendants do not contest that the Rule 23(a) requirements of numerosity, commonality, and typicality and the Rule 23(b)(3) requirements of predominance and superiority are met. Defendants make only two objections to class certification. They argue (1) that James Oetting is not an adequate class representative under Rule 23(a), and (2) that the class definition proposed in the Second Amended Complaint is

imprecise. For the reasons that follow, the Court *sua sponte* amends the class definition and grants the Motion for Class Certification.

### III.    LEGAL STANDARD

Subsection (a) of Federal Rule of Civil Procedure 23 sets out four prerequisites for a class action. The Rule 23(a) requirements are numerosity, commonality, typicality, and adequacy. Subsection (b) provides additional requirements for each type of class action.  To obtain certification under Rule 23(b)(3), as plaintiffs seek to do in this case, the moving party must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known, respectively, as predominance and superiority.

A district court must conduct a "rigorous analysis" in deciding whether to certify a class. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 306. "[T]he decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met." *Id.* at 307.  "Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence." *Id.* Moreover, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.* at 307.

### IV.    DISCUSSION

#### A.  Class Definition

In the Second Amended Complaint, plaintiff proposes the following class definition:

> all the members of the NationsBank classes (a) who were entitled to receive distribution from the Action in 2004; (b) who have received a distribution at any time from the Action and (c) who are yet to receive a distribution from the Action.

Second Am. Compl. ¶ 31. However, in his Motion for Class Certification, plaintiff argues for the following class definition, "all members of the class of NationsBank who filed claims and are eligible for additional distributions." Mot. for Class Certification, at 2. Defendants aver that the class definition in the Second Amended Complaint is imprecise because the use of the word "and" would define the class to include only individuals who both "have received" and "are yet to receive" a distribution from the settlement fund. Defendants therefore argue that the class should be defined as "all members of the NationsBank class who filed claims and are eligible for additional distributions in the *BankAmerica* action."

"An order that certifies a class action must define the class and the class claims, issues, or defenses . . . ." Fed. R. Civ. P. 23(c)(1)(B). Specifically, the order must "include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues, or defenses to be treated on a class basis." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). The Court may, in its discretion, amend the proposed class definition *sua sponte* to ensure that its order certifying the class is proper. *Rendler v. Gambon Bros. Development Co.*, 182 F.R.D. 152, 160 (E.D. Pa. 1998).

On March 16, 2016, the Court conducted a telephone conference with the parties, through counsel, for the purpose of refining the class definition. Based upon the discussion at that conference, the Court proposed the following definition:

> All individuals and entities who are or were members of one of the NationsBank classes in *In re BankAmerica Securities Litigation*, Multidistrict Litigation Number 1264, in the United States District Court for the Eastern District of Missouri, who (1) filed valid claims for distribution(s) from the NationsBank settlement fund, (2) received payment on their claims from the NationsBank settlement fund, and (3) are eligible for any additional distributions from the NationsBank settlement fund.

9

Plaintiff agreed to this proposed definition.

Defendants argue that the above definition lacks sufficient specificity with regard to the term "received payment," and propose the following definition:

> All individuals and entities who are or were members of one of the NationsBank classes in *In re BankAmerica Securities Litigation*, Multidistrict Litigation Number 1264, in the United States District Court for the Eastern District of Missouri, who (1) filed valid claims for distribution(s) from the NationsBank settlement fund, and (2) received a check(s) for payment on their claims from the NationsBank settlement fund, and (3) cashed their check(s) received from the NationsBank settlement fund as part of the initial distribution, and (4) are eligible for any additional distributions from the NationsBank settlement fund.

The Court concludes that defendants' proposed definition is inappropriate because it creates individualized questions of fact with regard to the form of payment made to each class member. Some of the class members may have received payment from the settlement fund via an electronic funds transfer or other means that did not require a paper check. The more generic term "received payment" captures all individuals and entities who made claims and received settlement funds. This also allows the class to be easily ascertained through class-wide proof, specifically the bank records of the settlement fund.

Moreover, there is no ambiguity as to the meaning of "received payment." Based on the Court's prior ruling on defendants' Motion to Dismiss and the plain language of the phrase, it is clear that "received payment" includes only individuals who actually received money from the settlement fund for their claims. The requirement that class members "received payment" would exclude individuals, like David Oetting, who made claims and received checks but did not cash them, because that does not constitute payment.

Finally, the Court declines to include the added limitation that class members received payment "as part of the initial distribution." There were multiple distributions from the settlement fund. Some claimants may have made claims and been paid in subsequent

distributions from the settlement fund. Because the fraudulent claims on the fund were made in the first distribution, all claimants in the first distribution and subsequent distributions suffered the same harm, diminution of the amount of the settlement fund. The Court concludes that all claimants who received payment, regardless of the distribution in which claims were paid, are properly part of the class in this case.

For these reasons, the Court will exercise its discretion to amend the class definition *sua sponte* to the one proposed by the Court following the March 16, 2016, telephone conference:

> All individuals and entities who are or were members of one of the NationsBank classes in *In re BankAmerica Securities Litigation*, Multidistrict Litigation Number 1264, in the United States District Court for the Eastern District of Missouri, who (1) filed valid claims for distribution(s) from the NationsBank settlement fund, (2) received payment on their claims from the NationsBank settlement fund, and (3) are eligible for any additional distributions from the NationsBank settlement fund.

### B.  Rule 23 Analysis

The parties do not dispute that the requirements of Rule 23(a) and 23(b)(3) are met, except for the adequacy of James Oetting as class representative. However, the Court conducts its own analysis of each element as required for class certification. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 307 ("[T]he decision to certify a class calls for findings by the court . . . .").

#### 1.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Satisfaction of this standard "does not require evidence of the exact number or identification of the members of the proposed class." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001). "'Generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the numerosity requirement of Rule 23(a) has been

met.'" *In re OSB Antitrust Litig.*, Civil Action No. 06-826, 2007 WL 2253418, at *2 (E.D. Pa. Aug. 3, 2007) (quoting *Ketchum v. Sunoco, Inc.*, 217 F.R.D. 354, 357 (E.D. Pa. 2003)).

In this case, the proposed class includes thousands of members of the NationsBank classes who made claims on the MDL settlement fund. This makes joinder impracticable and satisfies the numerosity requirement.

### 2.  Commonality

To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Commonality requires that plaintiffs demonstrate that their claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Commonality does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2011) (internal quotation marks omitted).

In this case, there are multiple questions of law or fact common to the class, including (1)  whether defendants owed a duty of care to the fund to prevent Penta's fraud; (2) whether defendants breached that duty of care; (3) whether defendants caused injury to the class through losses to the settlement fund, either by wrongful conduct or negligence; and (4) whether the class incurred damages due to a diminution of the proportional share of the settlement fund available to each claimant. These questions suffice to satisfy the commonality requirement.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). To conduct the typicality

inquiry, the court must examine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006). "The typicality requirement is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996). "If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Marcus*, 687 F.3d at 598. Unique defenses that apply only to the class representative are relevant to the typicality analysis. *Beck*, 457 F.3d at 296.

James Oetting and all members of the proposed class received distributions from the NationsBank settlement fund. The Second Amended Complaint alleges that the distributions to all of the NationsBank class members, including James Oetting, were equally affected by the Penta fraud. There are no unique defenses that apply only to James Oetting and not to the absent class members. The typicality requirement is thus satisfied.

### 4. Adequacy

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." "Whether adequacy has been satisfied 'depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.'" *McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 477 (E.D. Pa. 2009) (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).

Defendants do not dispute that the first element is satisfied and the Court agrees. Plaintiff's counsel possesses extensive class action experience and has ably represented the interests of plaintiff and the putative class to date. The Court therefore concludes that plaintiff's counsel is "qualified, experienced, and generally able to conduct the proposed litigation."

However, there is a dispute as to the second element—whether James Oetting is an inadequate class representative because he has interests antagonistic to the class. The second component of the adequacy inquiry "seeks to uncover conflicts of interest between named parties and the class they seek to represent." *In re Schering Plow Corp. ERISA Litig.*, 589 F.3d 585, 589 (3d Cir. 2009) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004)). The distinction between adequacy and the related typicality inquiry is that typicality focuses on "the absence of unique defenses and the alignment of interests" of the representative and the class while adequacy "focuses on possible conflicts of interest." *Id.*

Defendants argue that James Oetting is not an adequate class representative for three reasons: (1) James Oetting is insufficiently knowledgeable about the case because he only became involved after the Second Amended Complaint was filed; (2) James Oetting is being controlled by his brother, David Oetting; and (3) James Oetting is pursuing this litigation due to his, or his brother's, personal animus against the defendants. The Court examines each reason in turn.

*i. Knowledge of the Litgation.* "A class representative need only possess a minimal degree of knowledge necessary to meet the adequacy standard." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (citations and quotations omitted). "[W]hat is required with respect to adequacy of representation is that a named plaintiff has 'a basic understanding of the allegations made in the case, and what law is alleged to have been

violated, and that he would be willing to contest an action by his attorneys with which he did not agree.'" *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 213 (E.D. Pa. 2001) (quoting *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 186–87 (E.D. Pa. 2001)).

Defendants focus on statements made by James Oetting at his deposition to support their argument. Specifically, James Oetting testified that he was not aware of the litigation before the first Complaint was filed, that he did not recall having read the Second Amended Complaint prior to September 2015, and that he was not familiar with the details of the allegations in the Second Amended Complaint. Defs.' Opposition Ex. 2 (hereinafter "J. Oetting Dep."), at 27–28, 32.

The Court rejects defendants' argument that James Oetting lacks sufficient knowledge of the litigation to be an adequate class representative. James Oetting's knowledge or lack thereof prior to the filing of the Second Amended Complaint is irrelevant because he was not a named plaintiff or putative class representative until that time. His deposition demonstrates that, as of the time of filing of the Second Amended Complaint in September 2015, James Oetting was aware of the allegations in the case and what law is alleged to have been violated. While he did not recall specifically when, he testified that he reviewed the Second Amended Complaint, J. Oetting Dep., at 32, that he was aware of the defendants who had been sued, and that he understood the basic facts of the case as alleged in that complaint. J. Oetting Dep., at 28, 32, 47–50. The Court is satisfied that James Oetting has sufficient knowledge of the litigation to serve as class representative.

*ii. Control of the Litigation.* Defendants argue that David Oetting will continue to control the litigation despite no longer being the class representative. Specifically, David Oetting testified that "he is still the most knowledgeable person about the whole matter on the face of the

earth." Defs.' Opposition Ex. 3 (hereinafter "D. Oetting Dep."), at 54. David Oetting helped to prepare the Second Amended Complaint and other pleadings in this case, explaining "I've certainly been involved with them and often I'll draft the initial thing and then [plaintiff's counsel] will look at it and send it back." D. Oetting Dep., at 57. He also testified that he intends to remain involved in the litigation going forward, explaining "Whether I'm a client or a lawyer or a co-counsel or an associate or a partner really doesn't matter. The function I'm serving is the same being a lawyer looking at a pleading and bringing to that my knowledge of the situation." D. Oetting Dep., at 57.

The continued presence of David Oetting in this litigation is not unexpected, given that he is a class representative for the NationsBank class in the MDL. However, the mere fact that David Oetting may continue to review briefs in this case or attend strategy sessions does not make his brother James Oetting an inadequate class representative. Defendants cite no authority for the proposition that a class representative is inadequate if he receives advice from a third-party in the litigation, even if that third-party is a family member. The Court concludes that James Oetting is not an inadequate class representative merely because David Oetting plans to remain involved in the litigation.

*iii. Animus.* "[A]n unduly antagonistic litigant, or a litigant who bears a grudge against a defendant is not an appropriate class representative." *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986). "Preoccupation with peculiar retaliatory wrongs allegedly done to one may well make such a person an inadequate representative of the class." *Id.* This is in part because personal animus may prevent a class representative from fulfilling his "duty to use wise judgment in negotiating and approving a fair and proper settlement" on behalf of the class. *Stoneback v. ArtsQuest*, Civil Action No. 12-3287, 2013 WL 3090714, at *11 (E.D. Pa. June 20,

16

2013); *see also Real Estate Analysis, Ltd. v. Sarkisian*, Civil Action No. 05-3573, 2007 WL 2814591, at *4 (E.D. Pa. Sept. 24, 2007) ("The level of personal animus that Sarkisian displays towards REAL . . . suggests that . . . she and her legal team . . . would be unable to represent the class effectively in settlement negotiations."). However, "[i]t is stating the obvious to say that litigation is often born of ill will, and this is no less true in class actions." *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1407, 1415 (E.D.N.Y. 1989). To provide grounds to deny certification on adequacy grounds, the animus held by the class representative must be so great as to create a conflict of interest with the absent class members. *See In re Schering Plow*, 589 F.3d at 601; *see also Sarkisian*, 2007 WL 2814591, at *3 ("If there is a conflict between [named plaintiff's] goals and interests in the case and the goals and interests of the proposed class members, she cannot serve as an adequate class representative.").

In this case, the Court concludes that there is no conflict of interest between James Oetting and the absent class members, despite David Oetting's prior involvement in the MDL litigation. First, the Court notes that David Oetting is no longer a party to this case. James Oetting testified that, while he might consult with his brother for advice on how to proceed, he would have the final decision on the conduct of the litigation and any settlement. J. Oetting Dep., at 38, 42, 78. There is no evidence that James Oetting will be unable to exercise independent judgment in prosecuting the case on behalf of the class, and the Court declines to impute animus, if any, from David Oetting to James Oetting on the present record.

Even assuming *arguendo* that David Oetting's prior involvement in the MDL litigation is relevant to James Oetting's status as class representative, defendants have failed to demonstrate that David Oetting has personal animus against them. Defendants point to the history of litigation in the MDL as evidence of personal animus. However, many of the incidents that defendants

17

allege show David Oetting's animus towards Heffler and the individual defendants did not involve Heffler, but instead involved either the settlement reached by class counsel in the MDL or litigation against class counsel. David Oetting was one of the initial objectors to the *BankAmerica* settlement. In addition, David Oetting has opposed the attempts of the MDL court to dispose of remaining settlement funds via *cy pres* and he has repeatedly filed motions seeking attorneys' fees for his work on behalf of the class. Defendants also point to David Oetting's lawsuits against class counsel in the MDL for malpractice, which were dismissed on collateral estoppel and Article III standing grounds. These incidents did not involve Heffler, or the other defendants in this case, and thus are insufficient evidence that David Oetting, and by extension James Oetting, have personal animus against the defendants in this case.

Defendants claim that David Oetting is "obsessed" with the MDL settlement and will do anything possible to undermine that settlement. This argument is not persuasive. This action is based on Heffler's allegedly tortious actions in administering the MDL settlement and involves events unrelated to the history or merits of that settlement. Resolution of this case will not and cannot disturb the MDL settlement.

Defendants rely heavily on *Kamerman*  and *Sarkisian*, but those cases are distinguishable, as both involved unique defenses that applied only to the class representative or conflicts of interest between the class and the representative. In *Kamerman*, plaintiff demanded a death bed promise from his sons to carry on the litigation after his death. 112 F.R.D. at 197. The court's conclusion that plaintiff's estate would not be an adequate class representative was based on both the unique situation of the promise and the fact that there were unique defenses that could be asserted against the estate. *Id.* Similarly, in *Sarkisian*, plaintiff had a long history of antagonism toward defendants. 2007 WL 2814591, at *3–4. In addition, plaintiff in *Sarkisian* was pursuing

an independent lawsuit against the same defendants at the same time she sought to represent the class. *Id.* at *3. The court determined that "because Sarkisian has filed a companion lawsuit . . . her interests do not align with the proposed class at large." *Id.* at *4.

In this case, defendants have not identified any unique defense that applies only to James Oetting and not to the class. Nor have defendants identified a conflict of interest, apart from James Oetting's alleged unwillingness to settle this case based on his brother's animus. The Court thus concludes that *Kamerman* and *Sarkisian* are inapposite.

Further, with regard to Heffler's settlement argument, the Court is not persuaded. Defendants argue that "the history of the *BankAmerica* Action illustrates starkly why David Oetting, and by extension his brother, are unlikely to represent a class effectively in settlement negotiations in this case." Defs.' Opposition, at 10. Defendants have put forward no evidence, other than David Oetting's involvement in the MDL litigation, that James Oetting is unwilling to settle the case on reasonable terms. The fact that James Oetting has not agreed to settle the case to date does not, standing alone, demonstrate a conflict of interest with the absent class members.[3] Essentially, defendants complain that at this early stage of litigation, prior to class

---

[3] Defendants argue that the Court should consider "the factors the Third Circuit has directed courts to apply when assessing class action settlements" and seek to invoke several of the so-called *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Defs.' Opposition, at 11. Defendants cite no authority for the relevance of these factors before a class settlement has been reached. Assuming *arguendo* that the factors are relevant, the Court concludes that none of them would so favor settlement as to demonstrate a conflict of interest between James Oetting and the absent class members.

  Specifically, defendants point to (1) the complexity and expense of litigation, (2) the ability of defendants to withstand a greater judgment, and (3) "issues relating to damages and the best possible recovery." On the first issue, the complexity of the litigation remains to be determined, given that there has been no discovery beyond initial disclosures. With regard to the second, the mere fact that Heffler is without insurance coverage does not demonstrate, absent facts not before the court, that Heffler is unable to withstand any judgment in this case. Third, defendants argue that given the length of time since the MDL settlement "it may be difficult or

certification, plaintiff has been unwilling to settle the case for what defendants believe it is worth.

In summary, defendants' argument on adequacy amounts to two allegations: (1) James Oetting is not an adequate class representative in this case because of his brother's past and continuing involvement in the MDL litigation, and (2) the fact that plaintiff has not agreed to settle the case to date means that plaintiff will never agree to settlement on any terms. Neither of these allegations are supported by the record before the Court. The Court determines that plaintiff has met his burden of establishing that James Oetting will fairly and adequately represent the interests of the class.

### 5.   *Predominance*

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "This predominance test asks whether common issues of law or fact in the case predominate over non–common, individualized issues of law or fact." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1191 (2013) (emphasis in original). Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Id.* at 1196 (internal quotations and alternations omitted)).

In this case, each of plaintiff's claims involves almost entirely issues that are common to the class. Defendant does not dispute that the predominance requirement is satisfied. Plaintiff's

---

impossible to get payment to people who were actually harmed." This is not a *Girsh* factor, but the Court concludes that regardless it is not relevant to the adequacy inquiry.

breach of fiduciary duty claim requires resolution of common questions of law and fact as to the existence of a duty, whether that duty was breached, and whether there was a resulting injury. Plaintiff's accountant malpractice and negligence claims similarly involve common questions of duty, breach, and causation. Plaintiff's fraud claim involves common questions about each element of the liability analysis. Damages can be easily computed across the entire class because the alleged harm to each class member is directly proportional to that member's share of the NationsBank settlement. Accordingly, the Court concludes that the predominance requirement is satisfied.

### 6. Superiority

Rule 23(b)(3) requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." To determine whether the requirement is satisfied, a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996).

Defendant does not dispute that the superiority requirement is satisfied. First, the small size of the individual claims in this case makes maintaining them as individual actions cost-prohibitive. Second, because the claims depend almost entirely on common proof, class-wide adjudication is efficient. The Court concludes that the superiority requirement is satisfied because a class action is the fairest and most efficient way to adjudicate the claims at issue.

### V.    CONCLUSION

For the foregoing reasons, the Court grants plaintiff's Motion for Class Certification and certifies the class as defined pursuant to Rule 23(a) and 23(b)(3). An appropriate order follows.