**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES OETTING, Individually and on behalf of all others similarly situated,** <br> **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **HEFFLER, RADETICH & SAITTA, LLP, EDWARD J. SINCAVAGE, EDWARD J. RADETICH, JR., and MICHAEL T. BANCROFT,** <br> **Defendants.** | **NO. 11-4757** |

**DuBois, J.**                                                            **August 11, 2017**

**M E M O R A N D U M**

**I.       INTRODUCTION**

This case involves claims asserted by plaintiff James Oetting on behalf of himself and a certified class of similarly situated individuals who received payments from a settlement fund in a long-running multidistrict litigation in the United States District Court for the Eastern District of Missouri. This case was originally filed as a separate action in that district but was transferred to this Court pursuant to 28 U.S.C. § 1404(a) by Order dated July 25, 2011. Plaintiff seeks damages from defendants for harm suffered by the class due to fraudulent claims made on the settlement fund by a former employee of defendant Heffler, Radetich & Saitta, LLP ("Heffler"), that were authorized by defendants. Plaintiff asserts claims for negligence, accountant malpractice, breach of fiduciary duty, and fraud.

Presently before the Court are the parties' memoranda and supplemental memoranda on all choice of law issues. For the reasons that follow, the Court concludes that Pennsylvania's statute of limitations, the Missouri savings statute, and Missouri substantive law are applicable to this case.

## II.    BACKGROUND

The relevant facts as outlined in plaintiff's Second Amended Complaint, attached exhibits, and the underlying MDL docket are as follows.  This case arises out of securities litigation following a merger between BankAmerica Corporation ("BankAmerica") and NationsBank.  On October 16, 1998, the first of numerous class actions was initiated against BankAmerica.  Second Am. Compl. ¶ 1.  The Judicial Panel for Multi-District Litigation issued a Transfer Order on February 12, 1999, consolidating all cases relating to the merger for all pretrial purposes in the Eastern Division of the Eastern District of Missouri.  Second Am. Compl. ¶ 2.  Judge John F. Nangle was the appointed judge.  Judge Carol E. Jackson succeeded Judge Nangle upon his death.  *Id.*  The multi-district litigation is identified as *In re BankAmerica Corp. Securities Litigation*, 99-md-1264 (E.D. Mo.) ("the MDL").

By Order dated July 6, 1999, Judge Nangle certified four classes in the MDL: (1) the NationsBank Holder Class, (2) the NationsBank Purchaser Class, (3) the BankAmerica Holder Class, and (4) the BankAmerica Purchaser Class.  Second Am. Compl. ¶ 3.  Plaintiff James Oetting was a member of the original NationsBank Holder Class.  Judge Nangle approved a settlement between the MDL defendants and all four of the MDL classes by Order dated September 20, 2002.  Second Am. Compl. ¶ 24.  Under the terms of the settlement agreement, the MDL defendants agreed to pay $490 million to the class members, with $333.2 million allocated to a combined NationsBank class and $156.8 million allocated to a combined BankAmerica class.  *Id.*

Following submission of a proposal to class counsel, Heffler was appointed by the MDL Court as the Claims Administrator for the settlement.  Second Am. Compl. ¶¶ 4–9, 25–26.  As Claims Administrator, Heffler was responsible for publicizing the settlement, receiving and

reviewing submitted claims, identifying valid and invalid claims, and distributing the settlement proceeds to valid claimants. Second Am. Compl. ¶ 25–26. The individual defendants in this case, Edward J. Sincavage, Edward J. Radetich, Jr., and Michael T. Bancroft, were partners in Heffler during the time that the firm oversaw distribution of the MDL settlement fund. Second Am. Compl. ¶ 12.

On May 13, 2004, lead counsel for the NationsBank class filed a motion for partial distribution of the NationsBank settlement fund. Second Am. Compl. ¶ 29; Pls' Joint Mot. for Approval of Distribution of Class Settlement Fund, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. May 13, 2004), Doc. No. 616. In support of that Motion, counsel submitted an affidavit from defendant Sincavage stating, *inter alia*, that Heffler had examined and calculated all claims forms to determine that they were properly completed, signed, and documented. Second Am. Compl. ¶ 29. By Order dated June 14, 2004, Judge Nangle granted the Motion and approved a partial distribution of the settlement funds in accordance with the motion and the attached affidavit from Sincavage. *Id.*; Order, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. June 14, 2004), Doc. No. 630.

During Heffler's administration of the settlement, but prior to the first distribution of settlement funds authorized by the MDL Court by Order dated June 14, 2004, a then-employee of Heffler, Christian Penta, submitted false claims for payment from the NationsBank class settlement fund. Second Am. Compl. ¶ 28. Thus, the first distribution included "payment(s) of over $5.87 million based on false claims submitted by Penta and his co-conspirators." Second Am. Compl. ¶ 30. The fraud was not immediately discovered.

A grand jury in Philadelphia, Pennsylvania ultimately returned an indictment against Penta and four co-conspirators on charges including mail fraud, wire fraud, and tax evasion

relating to three separate class action settlement funds managed by Heffler, including the *In re BankAmerica* fund. Indictment, *United States v. Penta et al*., Criminal Action No. 08-550 (E.D. Pa. Sept. 11, 2008) (Savage, J.).[1] The Penta indictment was publicly announced on November 20, 2008, in a press release issued by the United States Attorney for the Eastern District of Pennsylvania. Defs' Mem. on Choice of Law Issues ("Defs' Mem."), Ex. G, Press Release, "Six Charged in $40 Million Class Action Fraud," Issued by the United States Attorney for the Eastern District of Pennsylvania, Nov. 20, 2008 ("Press Release").[2]

On October 29, 2009, the law firm of Green Jacobsen, former class counsel, filed a Supplemental Complaint with the MDL Court on behalf of the NationsBank class. Supp. Compl., *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. Oct. 29, 2009), Doc. No. 723. The Supplemental Complaint asserted against Heffler claims of breach of fiduciary duty, negligent misrepresentation, accountant malpractice, conversion, and money had and received. *Id*. On May 3, 2010, more than six months after the filing of the Supplemental Complaint, Heffler moved to dismiss or strike the Supplemental Complaint because, *inter alia*, the NationsBank class did not first obtain leave of court as required by Federal Rule of Civil Procedure 15(d). [Heffler's] Mot. to Strike the Supp. Compl., or in the Alternative, to Dismiss the Supp. Compl., *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. May 3, 2010), Doc. No. 745. In response, on May 13, 2010, Green Jacobsen moved for leave to file the Supplemental Complaint. Mot. for Leave to File Supp. Compl., *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. May 13, 2010), Doc. No. 749 & 750. The MDL Court ultimately granted Heffler's Motion to Dismiss and denied Green Jacobsen's Motion for

---

[1] Penta subsequently pled guilty to mail fraud, wire fraud, and filing a false tax return, and was sentenced to sixty months imprisonment and ordered to pay $19.571 million in restitution.

[2] *Available at* https://www.justice.gov/archive/usao/pae/News/2008/nov/Waltzer%20press.pdf.

leave to file the Supplemental Complaint by Order dated November 5, 2010, and dismissed the

Supplemental Complaint, concluding that although the allegations in the Supplemental

Complaint were "connected to" the underlying MDL, the asserted claims were "not similar

enough in substance to the claims in the underlying action to justify supplemental pleading."

Mem. and Order, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. Nov. 5,

2010), Doc. No. 763.

On February 8, 2011, former plaintiff David Oetting filed this lawsuit in the Eastern

District of Missouri on behalf of a putative class of NationsBank settlement claimants.

Complaint, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. Feb.

8, 2011). The Complaint named Heffler as the sole defendant, and included claims for breach of

fiduciary duty, accountant malpractice, and *respondeat superior* liability based on the conduct of

its former employee, Penta. *Id.* By Order dated July 25, 2011, Judge Jackson dismissed the

*respondeat superior* claim on the ground that it failed as a matter of Missouri tort law because

Penta acted outside of the scope of his employment. Memorandum and Order, *Oetting v.*

*Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. July 25, 2011), Doc. Nos.

19, 20. By separate Order dated July 25, 2011, Judge Jackson transferred the case to this Court

on Heffler's motion pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and

witnesses. Order, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D.

Mo. July 25, 2011), Doc. Nos. 18, 21.

Following the transfer to this Court, on August 16, 2011, plaintiff David Oetting filed the

First Amended Complaint. Heffler filed an Answer to the First Amended Complaint on

September 13, 2011. By Order dated August 21, 2015, the Court granted plaintiff leave to file

and serve a Second Amended Complaint. On September 3, 2015, David Oetting filed a Second

Amended and Restated Complaint, adding James Oetting as plaintiff. The Second Amended Complaint includes five separate claims for relief: a claim of breach of fiduciary duty against Heffler (Count I), a claim of "accountant malpractice" against Heffler (Count II), claims of fraud against Bancroft and Sincavage (Count III), a claim of negligence against Radetich ("Count VI" [sic]), and claims of negligence against "all defendants" ("Count VII" [sic]). The Second Amended Complaint asserts these claims on behalf of individual plaintiffs David Oetting and James Oetting, and on behalf of "a class of all persons similarly situated, who are defined as all members of the NationsBank classes (a) who were entitled to receive a distribution from the [MDL] Action in 2004; (b) who have received a distribution at any time from the [MDL] Action and [sic] (c) who are yet to receive a distribution from the [MDL] action."

On October 1, 2015, Heffler filed a Motion to Dismiss. The individual defendants also filed a separate Motion to Dismiss on that date. By Memorandum and Order dated December 15, 2015, the Court granted in part and denied in part defendants' Motions to Dismiss. The Court concluded that David Oetting lacked Article III standing to pursue claims in this case because he did not cash the checks issued by the MDL settlement fund, and the Court dismissed David Oetting from the case with prejudice. However, the Court concluded that James Oetting was properly added as a plaintiff by the Second Amended Complaint and that James Oetting had Article III standing. The Court denied the Motions to Dismiss in all other respects.

On January 5, 2016, remaining plaintiff James Oetting filed a Motion for Class Certification. Following limited discovery, defendants filed a Response in Opposition to the Motion on February 29, 2016. The Court ultimately certified the following class:

> All individuals and entities who are or were members of one of the NationsBank classes in *In re BankAmerica Securities Litigation*, Multidistrict Litigation Number 1264, in the United States District Court for the Eastern District of Missouri, who (1) filed valid claims for distribution(s) from the NationsBank

settlement fund, (2) received payment on their claims from the NationsBank settlement fund, and (3) are eligible for any additional distributions from the NationsBank settlement fund.

Pursuant to the Third Amended Scheduling Order dated November 3, 2016, motions for summary judgment and *Daubert* motions were scheduled to be filed on or before January 13, 2017. On December 2, 2016, counsel for defendants submitted to the Court a letter to request a scheduling conference for the purpose of addressing an "as-yet undetermined choice of law issue." *See* Doc. No. 104. The Court held a scheduling conference on December 14, 2016, and, recognizing that the parties had not previously raised choice of law issues, ordered the parties to brief all such issues. Following an initial round of briefing, on June 1, 2017, the Court ordered the parties to file supplemental memoranda of law addressing (1) the applicable statute of limitations, (2) the applicability of equitable tolling, and (3) the applicability of the Missouri and Pennsylvania savings statutes, and the parties did so. In addition, the Court held a telephone conference on August 4, 2017, at which counsel for the parties agreed that all choice of law issues, including the applicable statute of limitations, had been fully briefed and were ripe for decision. For the reasons set forth below, the Court concludes that the Pennsylvania statute of limitations, the Missouri savings statute, and Missouri substantive law are applicable to this case.

## III. DISCUSSION

### a. Law of the Case

Plaintiffs first argue that the "law of the case" doctrine requires the Court to apply Missouri law to all aspects of this case, because that state's law was used in a past decision in this case. That doctrine "provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal." *Walton v. City of Berkeley*, 223 S.W.3d 126, 128–29 (Mo. 2007) (citation omitted). While this case was still in the

Eastern District of Missouri, in granting defendants' Motion to Dismiss with respect to a *respondeat superior* claim, the district court stated that "[t]he parties are in agreement that Missouri law applies in this diversity action." Memorandum and Order, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. July 25, 2011), Doc. No. 18. Plaintiffs argue that the court's statement is binding as the "law of the case."

The Court rejects this argument. The doctrine of the law of the case only applies to issues that were "actually decided by the court." *Eckell v. Borbidge*, 114 B.R. 63, 69 (E.D. Pa. 1990) (DuBois, J.) (citing *Todd & Co., Inc. v. SEC*, 637 F.2d 154, 157 (3rd Cir. 1980)). The Missouri district court did not actually decide that Missouri law applied; it only stated that the parties were "in agreement" on that issue. The Court therefore declines to apply the law of the case doctrine.

b. <u>Statute of Limitations</u>

Although defendants have not formally challenged the timeliness of plaintiff's claims, the parties seek a determination of what state's statute of limitations applies to the claims in this case. The Court concludes that under the Missouri borrowing statute, the claims in this case accrued in Pennsylvania, and therefore the Pennsylvania statute of limitations applies to the case. The Court further concludes that the Missouri savings statute is also applicable.

*1. Applicable Law*

Because this case was filed in the Eastern District of Missouri and transferred pursuant to 28 U.S.C. § 1404(a), this Court must follow the law that would have been applied had it remained in its original venue. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). "A federal court exercising diversity jurisdiction is required to apply the law of the forum when ruling on statutes of limitations." *Nettles v. Am. Tel. & Tel. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995).

Therefore, acting as "a federal court sitting in diversity within the State of Missouri," this Court is "required to apply Missouri's statute of limitations to claims brought before it."  *Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483, 489 (W.D. Mo. 2010) (citing *Rademeyer v. Farris,* 284 F.3d 833, 836 (8th Cir.2002)).

Missouri's statute of limitations framework includes a "borrowing" statute, which requires that "[w]henever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state."  Mo. Rev. Stat.  § 516.190.  "The term 'originated,' as used in the borrowing statute, is equivalent to the term 'accrued.'"  *Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 620 (Mo. Ct. App. W.D. 2006) (citing *Thompson by Thompson v. Crawford,* 833 S.W.2d 868, 871 (Mo. 1992)).  A cause of action accrues "where as well as when the final significant event that is essential to a suable claim occurs."  *Penalosa Co-op. Exch. v. A.S. Polonyi Co.*, 754 F. Supp. 722, 733 (W.D. Mo. 1991) (citing *Mack Trucks, Inc. v. Bendix–Westinghouse Auto. Air Brake Co.*, 372 F.2d 18, 20 (3rd Cir. 1966)).  For most claims, a cause of action accrues when and "where the fact of damage became 'capable of ascertainment.'"  *Ferrellgas*, 190 S.W.3d at 621.  "Damage is ascertainable when the fact of damage can be discovered or made known, not when the plaintiff actually discovers injury or wrongful conduct."  *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. 1997).  Indeed, "[a] plaintiff's ignorance of his cause of action will not prevent the statute from running."  *State ex rel. Gasconade Cty. v. Jost*, 291 S.W.3d 800, 804 (Mo. Ct. App. 2009).

The determination of where and when a cause of action accrues is an objective test decided as a matter of law by the court.  *Anderson v. Griffin, Dysart, Taylor, Penner & Lay, P.C.*, 684 S.W.2d 858, 861 (Mo. Ct. App. 1984).

## 2. *Analysis*

Plaintiff's only argument[3] with respect to the Missouri borrowing statute is that the injuries alleged in this case have not yet accrued, because "no class member would have even known of the damages the class sustained at the time of discovery of the theft, or anytime thereafter. Even more so, virtually all of the class members do not even know to this day that the class was damaged." Pl.'s Supp. Mem. of Law ("Pl.'s Supp. Mem.") at 6–7. Plaintiff's argument ignores the relevant standard: a cause of action accrues, under the borrowing statute, "when the fact of damage can be discovered or made known, not when the plaintiff actually discovers injury or wrongful conduct," *Klemme*, 941 S.W.2d at 497, and "plaintiff's ignorance of his cause of action will not prevent the statute from running," *Jost*, 291 S.W.3d at 804. The Court thus rejects plaintiff's position.

Defendants primarily argue that each class member's injuries "accrued" in their individual home states and countries. Defs' Mem. at 6. In interpreting Missouri law, the United States Court of Appeals for the Eighth Circuit held that "for cases involving a purely economic injury, as opposed to a physical accident with economic consequences, a cause of action originates where the plaintiff is financially damaged." *Great Plains Trust Co. v. Union Pac. R. Co.*, 492 F.3d 986, 993 (8th Cir. 2007). Because the class members suffered a purely economic injury, defendants argue, *Great Plains* requires the application of the statute of limitation of each class member's home state.

---

[3] To the extent plaintiffs intend their arguments regarding the "most significant relationship" test, discussed *infra*, to guide the Court's analysis of the applicable statute of limitations under the Missouri borrowing statute, that argument has been rejected by Missouri courts. *Couzens v. Donohue*, 854 F.3d 508, 516 (8th Cir. 2017) (citing *Finnegan v. Squire Publishers, Inc.*, 765 S.W.2d 703, 707 (Mo. Ct. App. 1989)).

In response, plaintiff argues that *Great Plains* is "inapposite" because the harm in that case, the defendant's failure to pay, is not at issue in this case. Pl.'s Conflict of Laws Mem. ("Pl.'s Mem.") at 17. The Court agrees that *Great Plains* is distinguishable. The defendant in *Great Plains* was obligated to make certain interest payments to plaintiff, and the injury giving rise to the lawsuit was the defendant's failure to make one such payment. The court reasoned that the corporate plaintiff "could only have ascertained [the purely economic injury] at its place of business," in its home state, because that is where it "felt the cash flow crunch." *Great Plains*, 492 F.3d at 993 (internal quotations omitted). In other words, since the plaintiff expected payments, the injury was ascertainable as soon as the plaintiff discovered that no payment had been made. In contrast, in this case, the class members could not have ascertained their injuries when they received distributions, because they had no reason to suspect that their distributions were fraudulently reduced.

Defendants argue in the alternative that that Pennsylvania's statute of limitations applies because the harm in this case was first capable of ascertainment when and where the Penta indictment was announced. That announcement was made by way of a press release from the United States Attorney for the Eastern District of Pennsylvania, based in Philadelphia, on November 20, 2008. In support of this argument, defendants rely upon *Ferrellgas*, in which a Missouri-based company was involved in a lawsuit filed in California. 190 S.W.3d at 617. The company lost the lawsuit, and filed a malpractice suit in Missouri state court against the law firm that had represented it in the California litigation. *Id*. On appeal, the Missouri appellate court, applying the Missouri borrowing statute, concluded that California's statute of limitations applied to the case. *Id*. at 622. Specifically, the court held that the California verdict, when it was announced, became "a matter of public record, which is immediately 'capable of

11

ascertainment.'" *Id.* Since that verdict was announced in California, the court ruled that the injury accrued in California. *Id.* The court explicitly reasoned that it did not matter "where the plaintiffs were physically located" when they discovered the injury. *Id.* at 621.

Following the reasoning in *Ferrellgas*, this Court concludes that the class members' injuries became capable of ascertainment in Pennsylvania, where the Penta indictment was publicly announced. The press release announcing the indictment plainly stated that the indicted individuals had "submitted numerous false and fraudulent claims in three major class action lawsuits[, including] In Re: BankAmerica Corporation Securities Litigation." Penta Indictment. By way of a simple internet search for the term "BankAmerica," members of the NationsBank class could have easily discovered the facts giving rise to their injury. Therefore, at the time and place that the press release was made public—November 20, 2008, in Philadelphia, Pennsylvania—the injury became ascertainable, because "the fact of damage [could have been] discovered." *Klemme*, 941 S.W.2d at 497. The Court notes that at the telephone conference of August 4, 2017, counsel for both parties agreed that the press release was the event that caused the statute of limitations in this case to accrue.

For all of plaintiff's claims, Pennsylvania's two-year statute of limitations began to run on November 20, 2008. *See* 42 Pa. C.S.A. § 5524 (setting a two-year statute of limitations for torts, including fraud and negligence); *Sch. Dist. of Borough of Aliquippa v. Maryland Cas. Co.*, 587 A.2d 765, 770 (1991) (applying § 5524 to accountant malpractice claims); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) (applying § 5524 to breach of fiduciary duty claims). Applying Pennsylvania's two-year statute of limitations, the Court concludes that the original Complaint in this case was not timely filed. As discussed *supra*, the Penta indictment

triggered the statute of limitations in this case on November 20, 2008. David Oetting filed the original Complaint in this case more than two years later, on February 8, 2011.

c. Tolling Provisions

The Missouri borrowing statute requires that the court borrow not only the statute of limitations of the state in which the claims "accrued," but also any of that state's applicable tolling provisions. *Thompson*, 833 S.W.2d at 872. Therefore, the Court next considers whether any Pennsylvania tolling provisions or the Missouri savings statute apply to save plaintiff's claims. The Court concludes that the Missouri savings statute—which gives a plaintiff a one-year extension of time to refile a case that was timely commenced and subsequently dismissed without prejudice—is applicable under the facts of this case.[4]

Defendants argue that the Missouri savings statute is inapplicable because (1) the Missouri borrowing statute requires that the court use another state's tolling provisions—and only those provisions—when borrowing that state's statute of limitations, and (2) the Supplemental Complaint filed in the underlying MDL did not "commence" the case in the MDL Court. The Court rejects both arguments.

---

[4] Plaintiff argues that two other tolling theories—equitable tolling and Pennsylvania's savings statute—might also apply in this case. The Court rejects both arguments.

With respect to equitable tolling of state law claims, "[i]n Pennsylvania, judicial extensions of the statute of limitations are expressly forbidden absent fraud or its equivalent." *Aivazoglou v. Drever Furnaces*, 613 A.2d 595, 598 (1992) (citing 42 Pa. C.S.A. § 5504); *cf. Poole v. Marks*, 441 F. App'x 854, 857 (3d Cir. 2011) (discussing "the more lenient federal standard," which permits equitable tolling of federal claims "where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum"). Although plaintiff argues that defendants fraudulently misrepresented Penta's qualifications, *see* Pl.'s Mem. at 9–10, plaintiff does not argue that this misrepresentation caused plaintiff to delay filing the Complaint.

Pennsylvania's savings statute does not apply unless the case was originally filed in Pennsylvania state court. *Jewelcor Inc. v. Karfunkel*, 517 F.3d 672, 676 (3d Cir. 2008) (citing 42 Pa. C.S.A. 5535(a)(1); *Maxwell Downs, Inc. v. City of Philadelphia*, 638 A.2d 473, 476 (Pa. Commw. Ct. 1994)). Because this case was originally filed in federal court, Pennsylvania's savings statute does not apply.

*The Missouri Savings Statute Applies Even when Borrowing Another State's Statute of Limitations*

The Missouri savings statute provides that "[i]f any action shall have been commenced within the [applicable statute of limitations], and the plaintiff therein suffer a nonsuit . . . such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed." Mo. Ann. Stat. § 516.230. Defendants argue that the Missouri savings statute does not apply when a court is borrowing another state's statute of limitations under the Missouri borrowing statute. As discussed *supra*, when the borrowing statute requires a court to borrow another state's statute of limitations, the court must also borrow any applicable tolling provisions from that state. *Thompson*, 833 S.W.2d at 872. But the Missouri savings statute is distinct from the Missouri borrowing statute, and by their plain language the two are not mutually exclusive. Indeed, a Missouri appellate court ruled that the Missouri savings statute "unequivocally provides a one-year grace period to re-file a cause of action" that is timely commenced in Missouri and subsequently dismissed without prejudice— even when the case is governed by another state's statute of limitations and associated tolling provisions. *McMillan v. Pilot Travel Centers, LLC*, No. ED 104321, 2016 WL 6695389, at *2 (Mo. Ct. App. Nov. 15, 2016) (*transfer denied* (Jan. 10, 2017), *transfer denied* (May 2, 2017)). In support of its decision, the *McMillan* court cited and relied upon a number of Missouri Supreme Court cases. *See Toomes v. Cont'l Oil Co.*, 402 S.W.2d 321, 322 (Mo. 1966) ("[T]he original action having been brought within the limits prescribed, the timeliness of the second action, within the [Missouri] saving [statute], was not affected by the fact that the Kansas statute [of limitations] had run at the time of the second action.") (citing *Christner v. Chicago, R. I. & P. Ry. Co.*, 64 S.W.2d 752 (1933); *Turner v. Missouri-Kansas-Texas R. Co.*, 142 S.W.2d 455 (1940)).

*McMillan* is an intermediate appellate court opinion and defendants argue that this Court should decline to follow it. Instead, defendants argue that the Court should follow the general rule that under Missouri law, "[w]hen [a statute of limitations] is so borrowed, it is not wrenched bodily out of its own setting, but taken along with it are the correct decisions of its own state which interpret and apply it, and the companion statutes which limit and restrict its operation." *Thompson*, 833 S.W.2d at 872; *see also Davis v. Liberty Mut. Ins. Co.*, 55 F.3d 1365, 1367 (8th Cir. 1995). Defendants interpret this guidance as requiring that the court not only borrow those "companion statutes," but also ignore Missouri's parallel companion statutes. The Court rejects defendants' argument, because *Thompson* and *Davis* are not analogous to the facts of this case— neither case addresses the question of whether the Missouri savings statute is applicable when the borrowing statute requires the use of another state's statute of limitations and related tolling provisions.

In *Thompson*, the plaintiff was injured in Tennessee and filed suit in Missouri, and so the court concluded that the Missouri borrowing statute required that it borrow Tennessee's statute of limitations. *Thompson*, 833 S.W.2d at 872. Plaintiff's claims were dismissed as time-barred. *Id*. On appeal, the Supreme Court of Missouri rejected plaintiff's argument that his claims should have been saved by Missouri's minor tolling provision. *Id*. Rather, the court ruled that Missouri law required that it borrow "the Tennessee tolling provisions and its precedents as to the application of those provisions as well as the Tennessee statute of limitations." Because "Tennessee does not toll the statute of limitations for minor plaintiffs under the Tennessee wrongful death statute," the Court ruled, "the Missouri court should not toll the plaintiff's cause of action." *Id*. at 872–72. But a savings statute is distinct from a tolling provision. And "*Thompson* does not . . . comment or rule on the issue of whether a suit timely filed in

accordance with the borrowing statute then fell within the purview of the saving statute."
*McMillan*, 515 S.W.3d at 706.

The Eighth Circuit, in *Davis*, cited *Thompson* while addressing a similar situation. The plaintiffs in that case were injured in Iowa and, within Iowa's two-year statute of limitations, filed suit in Missouri state court. *Davis*, 55 F.3d at 1366. Plaintiffs filed a voluntary dismissal of their claims against two of the defendants, but then, after the Iowa statute of limitations had expired but within the period provided under the Iowa savings statute, refiled their complaint in Missouri state court against those same defendants. *Id*. Defendants removed the case to the United States District Court for the Eastern District of Missouri. *Id*. The district court held that the Missouri borrowing statute required it to borrow both Iowa's savings statute and Iowa's statute of limitations, *id*., and on appeal, the Eighth Circuit affirmed the district court's ruling, citing *Thompson*, *id*. at 1369. But *Davis* does not mention the Missouri savings statute.

The Court concludes that both *Thompson* nor *Davis* are distinguishable from this case. Neither case confronted the precise question at issue here—whether a Court sitting in Missouri, while applying another state's statute of limitations and that other state's tolling provisions via the Missouri borrowing statute, may still apply Missouri's own savings statute. Indeed, neither case even mentioned the Missouri savings statute. Because they address factually distinct situations, *Thompson* and *Davis* are not in tension with *McMillan*, and neither case explicitly or implicitly overrule *Toomes*.

### 2. *Applying the Missouri Savings Statute*

The Court next addresses the question of whether the Missouri savings statute applies under the facts of this case. That statute provides that "[i]f any action [1] shall have been *commenced* within the [applicable statute of limitations], [2] and the plaintiff therein *suffer a*

*nonsuit . . . [3] such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered . . . .*"  Mo. Ann. Stat. § 516.230 (emphases added).

Plaintiff argues that the filing of either the Supplemental Complaint or the Motion for Leave to File the Supplemental Complaint timely commenced this action.  He cites two cases involving motions for leave to file amended complaints in support of that position.[5]  *Mayes v. AT & T Info. Sys., Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989) ("[W]here the petition for leave to amend the complaint has been filed prior to expiration of the statute of limitations, while the entry of the court order and the filing of the amended complaint have occurred after the limitations period has expired . . . the amended complaint is deemed filed within the limitations period."); *Sheets v. Dziabis*, 738 F. Supp. 307, 313 (N.D. Ind. 1990) ("[T]he statute of limitations was tolled when the plaintiff, within the limitations period, filed a proposed amended complaint to add defendants accompanied by a motion to amend, even though the order granting leave to amend and the amended complaint's technical filing occurred after the running of the statute of limitations.").  But in both *Mayes* and *Sheets*, the court ultimately *granted* the motion for leave to amend, whereas here, the MDL Court *denied* the NationsBank class's Motion.  Because the class's Motion in this case was denied, neither case cited by plaintiff is applicable.

Defendants argue that the Supplemental Complaint was not "filed" because the MDL plaintiffs filed the Supplemental Complaint without leave of court, as required under Federal Rule of Civil Procedure 15(d), and because the MDL plaintiffs' subsequent motion for such leave was denied.  Mem. and Order, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. Nov. 5, 2010), Doc. No. 763.  In support of their argument, defendants cite *Minnesota*

---

[5] A plaintiff must obtain leave of court to file an amended complaint, and must similarly obtain leave of court whenever he seeks to file a supplemental complaint.  *See* Fed. R. Civ. P. 15(a)(2), (d).  Because of that similarity, the law applicable to the former is guiding with respect to the latter.

*Mining & Manufacturing Co. v. Superior Insulating Tape Co.*, 284 F.2d 481 (8th Cir. 1960). In that case, the Eighth Circuit stated that when a motion for leave to file a supplemental complaint is denied, the supplemental complaint itself "never became a part of the pleadings." *Id*. at 481. Defendants contend that because the Supplemental Complaint in this case was never "a part of the pleadings," it cannot be said to have "commenced" an action. Defs' Supp. Mem. of Law ("Defs' Supp. Mem.") at 17. However, the *Minnesota Mining* court's statement with respect to the status of the supplemental complaint, upon which defendants rely, only resolved the ancillary question of whether the denial of plaintiff's motion for leave to file the supplemental complaint had the effect of staying proceedings. *Minnesota Mining & Manufacturing* 284 F.2d at 481. That statement was not critical to the Eighth Circuit's ruling, affirming the trial court's decision to grant summary judgment in favor of defendant. *Id*. at 486 The Court therefore concludes that the *Minnesota Mining* court's statement regarding the supplemental complaint, consisting of a single sentence without elaboration or citation, is dictum which this Court is not required to follow. *See Humphrey's Executor v. United States*, 295 U.S. 602, 627 (1935) (dicta "may be followed if sufficiently persuasive but [] are not controlling").

Defendants also argue that a supplemental or amended complaint does not "commence" an action because "a civil action, viewed as the whole case, the whole proceeding, can only be commenced once." *Arnold Crossroads, L.L.C. v. Gander Mountain Co.*, No. 4:10-CV-2173, 2011 WL 2983511, at *2 (E.D. Mo. July 22, 2011). But in *Arnold Crossroads*, the district court was assessing a different question entirely—whether an amended complaint "commenced" a case for purposes of determining the deadline for removal for federal court. *Id*.

Because there is no further guidance from the Missouri Supreme Court or the Eighth Circuit that might assist the Court in addressing the unique circumstances of this case, the Court

turns instead to the history of this case and the underlying goals of statutes of limitation. Importantly, the Court recognizes that statutes of limitations are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation . . . ." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944).

The Supplemental Complaint was filed and served on all counsel of record on October 29, 2009. It was filed without leave of court, in contravention of Federal Rule of Civil Procedure 15(d). Nonetheless, Heffler did not file its Motion to Strike the Supplemental Complaint until some six months later, on May 3, 2010. That delay indicates that none of the parties involved— not the NationsBank class, not Heffler, and not even the MDL Court—recognized plaintiff's procedural error. The NationsBank class promptly filed a Motion for Leave to File the Supplemental Complaint just ten days after Heffler's Motion was filed. The MDL Court resolved the motions six months later, denying the NationsBank class's Motion for Leave and granting Heffler's Motion to Strike, on November 5, 2010. Based on that timeline, there is no evidence that NationsBank class's filings were anything other than a good faith effort to commence an action against Heffler. The Supplemental Complaint informed Heffler of the claims against it on October 29, 2009, less than a year after the Penta indictment was announced and long before the expiration of the two-year statute of limitations on November 20, 2010. Heffler has no reasonable argument that it was "surprised" or not "on notice" of the claims

against it within the statutory period.[6] *American Pipe*, 414 U.S. at 554. Therefore, notwithstanding the NationsBank class's procedural error, the Court construes the Supplemental Complaint has having been filed on October 29, 2009, effectively "commencing" an action for purposes of applying the Missouri savings statute.

Second, the Court concludes that the action commenced by the Supplemental Complaint resulted in a nonsuit. "A plaintiff suffers a nonsuit when a court order finally terminates the cause without prejudice." *Webb v. Mayuga*, 838 S.W.2d 96, 98 (Mo. Ct. App. 1992). The MDL Court's Order denying the NationsBank class's Motion for Leave to File the Supplemental Complaint did not specify whether that decision was with or without prejudice. Mem. and Order, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. Nov. 5, 2010), Doc. No. 763. However, because the Order explicitly states that the claims in the Supplemental Complaint "are more appropriately brought in a separate suit," *Id*. at 3 (quoting *Paige v. Harper*, 2009 WL 36409 at *2 (E.D. Mo. 2009), the Court construes the Order as dismissing the Supplemental Complaint without prejudice to the NationsBank class's right to file the complaint independently. Therefore, the NationsBank class, including David Oetting, suffered a nonsuit.

Third, the Court concludes that David Oetting's initial Complaint in this case was filed within one year of the nonsuit. The Penta indictment was announced on November 20, 2008, and since that event triggered Pennsylvania's two-year statute of limitations, the NationsBank class had until November 20, 2010, to file this case. An action was timely "commenced" when the NationsBank class filed the Supplemental Complaint in the MDL Court, on October 29, 2009. Therefore, pursuant to the Missouri savings statute, after the supplemental complaint was dismissed on November 5, 2010, the NationsBank class had one year to commence a new action.

---

[6] Both the Supplemental Complaint in the MDL Court and the initial Complaint in this case named Heffler as the sole defendant.

David Oetting, on behalf of a putative class of NationsBank settlement claimants, commenced this action on February 8, 2011, well within that one year time frame. The Court therefore concludes that the Missouri savings statute applies to save the claims in this case. The case is not barred by the expiration of Pennsylvania's two-year statute of limitations.

d. <u>Substantive Law</u>

As with the statute of limitations discussion, the parties agree that because this case was originally filed in Missouri, pursuant to 28 U.S.C. § 1404(a), Missouri choice of law rules apply. *Van Dusen*, 376 U.S. at 639.

*1. Applicable Law*

When determining what state's substantive law to apply, Missouri courts "start with the presumption that the law of the state where the injury occurred controls, unless some other state has a more significant relationship to the occurrence and parties, in which case the law of that state applies." *Garner v. Union Pac. R.R. Co.*, No. 4:15CV00733, 2015 WL 7352281, at *5 (E.D. Mo. Nov. 20, 2015). In determining whether another state has "a more significant relationship," Missouri follows the Restatement of Conflict of Laws, Section 145. *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969). Section 145 provides that:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a) the place where the injury occurred,
    (b) the place where the conduct causing the injury occurred,
    (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
    (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). Using the four types of contacts listed under subsection two, the court must then consider the principles listed in Section 6:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

*2. Analysis*

Plaintiff argues that Missouri has the most significant relationship with the case, while defendants argue that either Pennsylvania or New Jersey has the most significant relationship. Based on the contacts listed in Section 145 and the factors listed in Section 6 of the Restatement (Second) of Conflict of Laws, the Court concludes that because of the unique nature of this case and its intricate history, Missouri has the most significant relationship with the case, and therefore Missouri substantive law applies.

Missouri courts "start with the presumption that the law of the state where the injury occurred controls, unless some other state has a more significant relationship to the occurrence and parties, in which case the law of that state applies." *Garner*, 2015 WL 7352281, at *5. As a preliminary matter, the Court recognizes that the place where the injury "occurred" is a distinct

inquiry from where the injury "accrued" under the Missouri borrowing statute. *See supra* Sec. III(B)(2). "Missouri choice of law rules dictate that the place where the act takes harmful effect or produces the result complained of is the more significant contact in determining the location of the injury." *Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co.*, 668 F.3d 991, 997 (8th Cir. 2012). In cases of economic injury, "the place where [a plaintiff] feels the economic impact . . . is the place where an injury occurs for purposes of a Section 145 choice-of-law inquiry." *Id.* at 997. The Eighth Circuit has also held that, under this analysis, an ongoing "injury occurred . . . where [plaintiff] resided at each relevant time period." *Birnstill v. Home Sav. of Am.*, 907 F.2d 795, 798 (8th Cir. 1990). The certified class in this case includes over 100,000 members who reside in all fifty states and numerous countries. Defs' Mem. at 2; Ex. F. Although the class members are more concentrated in some states and countries, there is no single location with a uniquely high concentration. *See id.* Because the class members, and therefore the places where the injuries occurred, are dispersed, the Court concludes that there is no presumption that any particular state's substantive law should apply. *Garner*, 2015 WL 7352281, at *5.

Under Section 145, the Court must consider the following contacts "according to their relative importance with respect to the particular issue:"

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971). The Court addresses each of these contacts in turn.

First, as discussed *supra*, the place where an injury "occurred" differs from the place where it injury "accrued" under the Missouri borrowing statute, and the injury in this case

"occurred" in the class members' home many states and countries.  *See supra* Sec. III(B)(2).

Therefore, this first contact does not favor the application of any particular state's substantive

law.

Second, the conduct causing the injury occurred at Heffler's Mount Laurel facility, in

New Jersey, because that is where the BankAmerica fund was administered and where the

scheme to defraud occurred.  Defs' Mem. at 1, 14; Ex. C, Dep. of Edward Sincavage, Aug. 16,

2016 ("Sincavage Dep."), at 75:13–76:2.  Thus, this contact favors the application of New Jersey

law.

The third contact requires the Court to consider "the domicile, residence, nationality,

place of incorporation and place of business of the parties."  Restatement (Second) of Conflict of

Laws § 145 (1971).  As noted *supra*, the certified class in this case includes over 100,000

members who reside in all fifty states and numerous countries, and no single location is home to

a uniquely high concentration.  Defs' Mem. at 2; Ex. F.  On the other hand, defendant Heffler is

an LLP that is a citizen of Pennsylvania and New Jersey, with its principal place of business in

Philadelphia, Pennsylvania, and the individual defendants are "believed to be [] resident-

citizen[s] of Philadelphia."  Second Am. Compl. ¶¶ 18–21.  Because the class members are

dispersed, and all defendants are domiciled in Pennsylvania, this third contact slightly favors

application of Pennsylvania law.

Finally, under the fourth contact, the Court must consider the place where the

relationship, if any, between the parties is centered.  Defendants argue that the relationship is

centered in New Jersey, noting that the NationsBank class members were required to send their

individual claim forms to Heffler, the claims administrator, at a designated Post Office Box in

New Jersey.  Defs' Mem. at 16; *see*, *e.g.*, Order Granting Preliminary Approval of Settlement

and Related Matters, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. April 5, 2002), Doc. No. 458, at 2–4. However, the Court disagrees, and concludes that Missouri was and continues to be a far more significant center of the parties' relationship. Although class members were required to send forms to Heffler in New Jersey, the class members had no direct relationship with Heffler. Rather, the MDL Court, in the Eastern District of Missouri, orchestrated and monitored the class members' interactions with Heffler, and retained the power to resolve all disputes over claims and distributions. *See* Pl.'s Mem. at Ex. F, Order Granting Preliminary Approval of Settlement and Related Matters, *In re BankAmerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. April 5, 2002), Doc. No. 458, at 3–4. Moreover, the underlying MDL continues to be adjudicated in the Eastern District of Missouri. Although this case involves claims that are separate from the underlying MDL, there is no question that this case is inextricably tied to the ongoing MDL. Thus, the Court concludes that this case has a substantial connection to Missouri.

### 1. Section 6

Having sorted through the contacts articulated in Section 145 of the Restatement (Second) of Conflict of Laws, the Court next considers the factors listed in Section 6.

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). The parties have not articulated, and the Court has not discovered, any compelling reason to consider factors (a), (b), (f), or (g).

Under factor (c), a state has an interest in regulating the conduct of professionals and firms that are domiciled within its borders. *Cf. Stillwagon v. Innsbrook Golf & Marina, LLC*, No. 2:11-CV-1338, 2013 WL 1180312, at *8 (W.D. Pa. Mar. 20, 2013) ("Pennsylvania has a strong interest in regulating the conduct of its attorneys."). Because all defendants are domiciled in Pennsylvania, factor (c) favors the application of Pennsylvania law.

As to factor (e), one of the claims in this case alleges accountant malpractice, a body of law that sometimes requires the filing of a certificate of merit to deter frivolous claims. *See Petition of Hall By & Through Hall*, 688 A.2d 81, 87 (N.J. 1997) (concluding that the purpose of the affidavit of merit statute is "to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation"). Both Pennsylvania and New Jersey require plaintiffs to file a certificate or affidavit of merit, respectively, in cases alleging professional malpractice. Pa.R.C.P. No. 1042.3; N.J. Stat. Ann. § 2A:53A-27. But just one of the five claims in this case alleges accountant malpractice, so this factor only slightly favors the application of Pennsylvania or New Jersey law.

Relatedly, factor (d) strongly supports the application of Missouri law. Defendants argue that Pennsylvania or New Jersey law should apply to this case. That would enable defendants to challenge plaintiff's claims for failure to file the required certificate or affidavit of merit. *See* Defs' Mem. at 11. The comments to Section 6 note that "it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Restatement (Second) of Conflict of Laws § 6, comment (g) (1971). In this case, David Oetting filed suit in Missouri, and, molding his conduct to the requirements of that state, did not file a certificate or affidavit of merit. Further, in the

infancy of this case, "[t]he parties [were] in agreement that Missouri law applies in this diversity action." Memorandum and Order, *Oetting v. Heffler, Radetich, & Saitta, LLP*, Civil Action No. 11-253 (E.D. Mo. July 25, 2011), Doc. No. 18. It was not until late 2016—more than five years after the case was filed, and long after plaintiff's certificate or affidavit of merit could have been timely filed—that defendants suggested otherwise. The Court therefore finds that the interest in protecting plaintiffs justified expectations, under factor (d), strongly supports the application of Missouri law.

Based on the contacts listed in Section 6 and the factors described in Section 145, the Court concludes that Missouri has a stronger connection to this case than any other state. Pennsylvania has a connection to the case because defendants are domiciled in this state, and because Pennsylvania has an interest in regulating its professionals and firms. New Jersey, too, has a connection to the case, because the underlying fraud was perpetrated at Heffler's Mount Laurel, New Jersey office, and class members had some minimal interactions with that office. In addition, both Pennsylvania and New Jersey have laws requiring a certificate or affidavit of merit that satisfy the interest of ensuring professional malpractice claims are not frivolous. However, Missouri is where the underlying MDL was litigated and continues to be adjudicated; it is where plaintiff initially attempted to file this case; it is where the MDL Court coordinated and oversaw the relationship between class members and defendants; and applying Missouri law avoids the "draconian results" of the affidavit or certificate of merit requirement, and would serve to protect justified expectations pursuant to Section 6(d). Although Pennsylvania and New Jersey have a connection to this case, the Court concludes that Missouri has the strongest connection of any state. The Court therefore concludes that Missouri substantive law applies to all claims in this case.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the claims in this case accrued in Pennsylvania and that, pursuant to the Missouri borrowing statute, Pennsylvania's statute of limitations is applicable to the case.  The Court also concludes that the Missouri savings statute applies.  Plaintiff's claims thus survive and will be allowed to proceed—they are not barred by the expiration of Pennsylvania's two-year statute of limitations.  The Court further rules that Missouri substantive law governs the case.  An appropriate order follows.