| | |
|---|---|
| **JAMES OETTING, Individually and on behalf of all others similarly situated,** <br> **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **HEFFLER, RADETICH & SAITTA, LLP, EDWARD J. SINCAVAGE, EDWARD J. RADETICH, JR., and MICHAEL T. BANCROFT,** <br> **Defendants.** | **NO.  11-4757** |

**DuBois, J.**                                                         **December 15, 2017**

**M E M O R A N D U M**

## I.    INTRODUCTION

This class action involves claims asserted by plaintiff James Oetting on behalf of himself and a certified class of similarly situated individuals who received payments from a settlement fund in a long-running multidistrict litigation in the United States District Court for the Eastern District of Missouri.  This case was originally filed as a separate action in that district but was transferred to this Court pursuant to 28 U.S.C. § 1404(a) by Order dated July 25, 2011.  Plaintiff seeks damages from defendants for harm suffered by the class due to fraudulent claims made on the settlement fund by a former employee of defendant Heffler, Radetich & Saitta, LLP ("Heffler"), that were authorized by defendants.  Plaintiff asserts claims for negligence, accountant malpractice, breach of fiduciary duty, and fraud.

Presently before the Court is defendants' Motion for Reconsideration, or in the Alternative, to Certify Order for Interlocutory Appeal of its August 11, 2017, Memorandum and Order ("Motion").  In that Memorandum and Order, this Court ruled that Missouri substantive law applied to the case, that Missouri law incorporated Pennsylvania's statute of limitations

through Missouri's borrowing statute, and that Missouri's savings statute, which allows certain cases to be refiled within one year of dismissal, barred application of the borrowed Pennsylvania statute of limitations. *Oetting v. Heffler, Radetich & Saitta, LLP*, Civ. No. 11-4757, 2017 WL 3453342 (E.D. Pa. Aug. 11, 2017), Doc. No. 117 [hereinafter, "August 11 Memorandum and Order"].

In their Motion, defendants seek reconsideration of the following rulings in the August 11, 2017, Memorandum and Order: (1) that the decision of the United States Court of Appeals for the Eighth Circuit in *Davis v. Liberty Mutual. Insurance Co.*, 55 F.3d 1365 (1995), is distinguishable from this case and does not bar application of Missouri's savings statute to a borrowed statute of limitations, and (2) that Missouri's savings statute may be applied to two legally distinct plaintiffs, an issue defendants raise for the first time on reconsideration. In their Motion, defendants also seek certification for interlocutory appeal of the question whether docketing of a supplemental complaint under Federal Rule of Civil Procedure 15(d), without leave of court, commences an action for purposes of the Missouri savings statute.

## II.    BACKGROUND

The facts set forth below are drawn from the Second Amended Complaint and attached exhibits, the underlying MDL docket, and the parties' briefing on the choice of law issue.

### A.  Underlying Proceedings

This case arises out of securities litigation following a merger between BankAmerica Corporation ("BankAmerica") and NationsBank. On February 12, 1999, the Judicial Panel for Multi-District Litigation issued a Transfer Order, consolidating the many cases relating to the merger for all pretrial purposes in the Eastern Division of the Eastern District of Missouri. Second Am. Compl. ¶ 2. The multi-district litigation is identified as *In re BankAmerica Corp.*

*Securities Litigation*, MDL No. 1264 (E.D. Mo.) ("the MDL"). Four classes were certified in the

MDL on July 6, 1999, two of which are relevant in this case: The first, the NationsBank Holder

Class, consisted of "all common and preferred shareholders of NationsBank Corporation who

were entitled to vote on the merger of NationsBank and Old BankAmerica or who held their

shares in NationsBank as of the close of business on September 30, 1998." Order Relating to

Class Certification at 3, *In re BankAmerica Corp.*, No. 99-md-1264 (E.D. Mo. July 6, 1999),

Doc. No. 39. The second class, the NationsBank Purchaser Class, consisted of "all purchasers of

NationsBank securities between August 4, 1998, and September 30, 1998."[1] *Id.* David Oetting,

a former plaintiff in this case, was a representative of only the NationsBank Holder Class.[2] *Id.* at

4. James Oetting, the current class representative in this case, was not a class representative in

the MDL, *id.* at 4, and later withdrew as a plaintiff in the MDL. Order, *In re BankAmerica*

*Corp.*, No. 99-md-1264 (E.D. Mo. May 15, 2001), Doc. No. 236. A settlement was approved in

the MDL on September 20, 2002, with $333.2 million to be paid to the NationsBank Classes.

Order at 1, *In re BankAmerica Corp.*, No. 99-md-1264 (E.D. Mo. Sept. 30, 2002), Doc. No. 571;

Second Am. Compl. ¶¶ 3, 24, *Oetting v. Heffler, Radetich & Saitta, LLP*, Civ. No. 11-4757 (E.D.

Pa. Sept. 3, 2015) [hereinafter "Second Am. Compl."].

---

[1] Two additional classes, of BankAmerica Holders and BankAmerica Purchasers, were also certified in the MDL. Order Relating to Class Certification at 3, *In re BankAmerica Corp.*, No. 99-md-1264 (E.D. Mo. July 6, 1999), Doc. No. 39. The BankAmerica Holder Class consisted of "all common and preferred shareholders of Old BankAmerica Corporation who were entitled to vote on the merger of NationsBank and Old BankAmerica or who held their shares in Old BankAmerica as of the close of business on September 30, 1998." *Id.* The BankAmerica Purchasers Class consisted of "all purchasers of BankAmerica Corporation securities between August 4, 1998, and October 13, 1998." *Id.* Neither of those classes is relevant to this litigation.

[2] In their briefing on this Motion, plaintiffs refer to a singular "NationsBank class." *E.g.*, Pl.'s Resp. Opp. Mot. Reconsideration at 3, *Oetting*, Civ. No. 11-4757 (E.D. Pa. Sept. 8, 2017), Doc. No. 119. As noted above, two classes of NationsBank plaintiffs were certified in the MDL, of which David Oetting represented only the Holder Class. The class certified in this case includes "[a]ll individuals and entities who are or were members of one of the NationsBank classes in *In re BankAmerica Securities Litigation*," with additional restrictions, as described below. Order, *Oetting*, Civil Action No. 11-253 (E.D. Mo. Mar. 24, 2016), Doc. No. 58. The Second Amended Complaint in this action contains a similar definition of the then-proposed class. Second Am. Compl. ¶ 31. In keeping with the Order granting class certification and the Second Amended Complaint in this case, this Court interprets references in plaintiffs' briefing to the singular "NationsBank class" to refer to members of the combined NationsBank Holder and Purchaser Classes certified in the MDL.

The MDL Court appointed Heffler as the Claims Administrator for the settlement. Second Am. Compl. ¶¶ 4–9, 25–26. During Heffler's administration of the settlement, but prior to the first distribution of settlement funds authorized by the MDL Court by Order dated June 14, 2004, a then-employee of Heffler, Christian Penta, submitted false claims for payment from the class settlement fund. Second Am. Compl. ¶¶ 28, 30. He and his co-conspirators received "payment(s) of over $5.87 million based on [the] false claims." *Id.* A grand jury sitting in Philadelphia, Pennsylvania, returned a sealed indictment against Penta and four co-conspirators on September 11, 2008, and the United States Attorney for the Eastern District of Pennsylvania publicly announced the indictment by press release in Philadelphia on November 20, 2008. Defs' Mem. on Choice of Law Issues ("Defs' Mem.") at 2-3, *Oetting*, Civ. No. 11-4757 (E.D. Pa. Jan. 27, 2015), Doc. No. 107; *id.* Ex. G, Press Release, "Six Charged in $40 Million Class Action Fraud," Issued by the United States Attorney for the Eastern District of Pennsylvania, Nov. 20, 2008 ("Press Release").

On October 29, 2009, the law firm of Green Jacobson, P.C., former counsel for the NationsBank Classes in the MDL, docketed a Supplemental Complaint with the MDL Court, asserting claims against Heffler for breach of fiduciary duty, negligent misrepresentation, accountant malpractice, conversion, and money had and received. Supp. Compl., *In re BankAmerica Corp.*, MDL No. 1264 (E.D. Mo. Oct. 29, 2009), Doc. No. 723. Plaintiffs in the Supplemental Complaint were identified as the "NationsBank Class." *Id.* Shortly afterwards, David Oetting, pro se, filed a Motion for Appointment of Special Class Counsel to represent the NationsBank Classes for the claims asserted in the Supplemental Complaint, arguing that the relationship between Green Jacobson and Heffler prevented Green Jacobson from serving as an adequate lead counsel for the classes. Mot. for Appointment of Special Class Counsel at 6, *In re*

*BankAmerica Corp.*, MDL No. 1264 (E.D. Mo. Feb. 12, 2010), Doc. No. 731. Oetting's Motion was denied. Order, *In re BankAmerica Corp.*, MDL No. 1264 (E.D. Mo. Apr. 12, 2010), Doc. No. 743. On May 3, 2010, more than six months after the docketing of the Supplemental Complaint, Heffler moved to dismiss or strike the Supplemental Complaint because, *inter alia*, the NationsBank class did not first obtain leave of court as required by Federal Rule of Civil Procedure 15(d). Mot. to Strike the Supp. Compl., or in the Alternative, to Dismiss the Supp. Compl., *In re BankAmerica Corp.*, MDL No. 1264 (E.D. Mo. May 3, 2010), Doc. No. 745. In response, on May 13, 2010, Green Jacobson moved for leave to file the Supplemental Complaint. Mot. for Leave to File Supp. Compl., *In re BankAmerica Corp.*, MDL No. 1264 (E.D. Mo. May 13, 2010), Doc. Nos. 749–50. The MDL Court ultimately granted Heffler's Motion to Dismiss the Supplemental Complaint and denied Green Jacobson's Motion for Leave to File the Supplemental Complaint by Order dated November 5, 2010, concluding that although the allegations in the Supplemental Complaint were "connected to" the underlying MDL, the asserted claims were "not similar enough in substance to the claims in the underlying action to justify supplemental pleading." Mem. and Order, *In re BankAmerica Corp.*, MDL No. 1264 (E.D. Mo. Nov. 5, 2010), Doc. No. 763.

### B. This Action

On February 8, 2011, former plaintiff David Oetting filed a complaint in the Eastern District of Missouri on behalf of a putative class of "all members of the NationsBank class who have or are to receive a distribution from the action." Complaint ¶ 24, *Oetting*, Civil Action No. 11-253 (E.D. Mo. Feb. 8, 2011). The Complaint did not define the term "NationsBank class," but it stated that $333.2 million—the combined amount awarded to both the NationsBank Holder and Purchaser classes—was awarded to the "NationsBank class" in the MDL, suggesting plaintiffs used the term to include both the NationsBank Holder and Purchaser Classes. *Id.* ¶ 11.

On July 25, 2011, the case was transferred to this Court on Heffler's motion pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. Order, *Oetting*, Civil Action No. 11-253 (E.D. Mo. July 25, 2011), Doc. Nos. 18, 21. During the course of the litigation, the Complaint was twice amended to add James Oetting as a named plaintiff and class representative, to assert additional claims, and to name additional individual defendants. The First Amended Complaint did not alter the definition of the class, while the Second Amended Complaint provided that the suit was brought on behalf of a class of "all the members of the NationsBank classes (a) who were entitled to receive a distribution from the Action in 2004; (b) who have received a distribution at any time from the Action and (c) who are yet to receive a distribution from the Action." Second Am. Compl. ¶ 31.

By Memorandum and Order dated December 16, 2015, the Court granted in part and denied in part defendants' Motions to Dismiss the Second Amended Complaint, concluding that David Oetting lacked standing to pursue the claims in this case under Article III of the United States Constitution because he did not cash the checks issued by the MDL settlement fund. Pursuant to that Memorandum and Order, the Court dismissed David Oetting from the case.

By Order dated March 24, 2016, the Court certified the plaintiff class in the case, as follows:

> All individuals and entities who are or were members of one of the NationsBank classes in In re BankAmerica Securities Litigation, Multidistrict Litigation Number 1264, in the United States District Court for the Eastern District of Missouri, who (1) filed valid claims for distribution(s) from the NationsBank settlement fund, (2) received payment on their claims from the NationsBank settlement fund, and (3) are eligible for any additional distributions from the NationsBank settlement fund.

Order, *Oetting*, Civil Action No. 11-253 (E.D. Mo. Mar. 24, 2016), Doc. No. 58.

On December 2, 2016, counsel for defendants submitted to the Court a letter requesting a scheduling conference for the purpose of addressing an "as-yet undetermined choice of law

issue." *See* Doc. No. 104. The Court held a scheduling conference on December 14, 2016, and, recognizing that the parties had not previously raised choice of law issues, ordered the parties to brief all such issues. Following an initial round of briefing, on June 1, 2017, the Court ordered the parties to file supplemental memoranda of law addressing (1) the applicable statute of limitations, (2) the applicability of equitable tolling, and (3) the applicability of the Missouri and Pennsylvania savings statutes, and the parties did so. In addition, the Court held a telephone conference on August 4, 2017, at which counsel for the parties agreed that all choice of law issues, including the applicable statute of limitations and savings statute, had been fully briefed and were ripe for decision.

On August 11, 2017, this Court ruled that Missouri substantive law and, through Missouri's borrowing statute, Pennsylvania's two-year statute of limitations apply to plaintiff's claims. Memorandum, *Oetting*, Civil Action No. 11-4757, WL 3453342 (E.D. Pa. Aug. 11, 2017), Doc No. 117. The Court also ruled that Missouri's savings statute is applicable to the case, notwithstanding the application of Pennsylvania's statute of limitations. *Id.* On August 25, 2017, defendants filed their Motion for Reconsideration or, in the Alternative, to Certify Order for Interlocutory Appeal. They seek reconsideration of the August 11, 2017, Memorandum and Order under Federal Rule of Civil Procedure 60 and for certification for interlocutory appeal of that part of the Order relating to docketing of a supplemental complaint without court approval. *See* Doc. No. 118.

### III.    LEGAL STANDARD

Defendants move for reconsideration pursuant to Federal Rule of Civil Procedure 60. Doc 118 at 1. Rule 60(b), however, pertains only to "final" judgments or orders, defined as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the

judgment." *Penn W. Assocs. v. Cohen*, 371 F.3d 118, 125 (3d Cir. 2004) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Where an order or judgment is not "final," relief is unavailable under Rule 60(b). *Id.*

Despite the limitation on Rule 60(b), a district court retains inherent authority to reconsider any previous ruling in the same litigation. *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571–72 (7th Cir. 2006). "Rule 60 does not affect, interfere with, or curtail the common-law power of the Federal courts" in cases over which they maintain jurisdiction; instead, "the broad power, which was theirs by the common law, to deal with situations where . . . relief should be granted from manifest error, remain[s] inherent in the courts." *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) (quoting *Bucy v. Nevada Construction Co.*, 125 F.2d 213, 217 (9th Cir. 1942)). Thus, despite the inapplicability of Rule 60, this Court retains the authority to reconsider its previous ruling.

Only three situations warrant granting reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The moving party has the burden of establishing one of these grounds. *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). The grant or denial of reconsideration lies within the discretion of the district court. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

The scope of a motion for reconsideration is "extremely limited" and should not be used to relitigate the case. *Blystone*, 664 F.3d at 415. A motion for reconsideration "addresses only factual and legal matters that the Court might have overlooked." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal citation omitted). "It is

improper on a motion for reconsideration to ask the Court to rethink what it already thought through—rightly or wrongly." *Id.* (citation omitted).

## IV. DISCUSSION

In their Motion, defendants argue (1) that this Court made a clear error of law in distinguishing the decision of the United States Court of Appeals for the Eighth Circuit in *Davis v. Liberty Mut. Ins. Co.*, 55 F.3d 1365 (8th Cir. 1995), and applying Missouri's savings statute to a borrowed statute of limitations; (2) that this Court made a clear error of law in applying the Missouri savings statute to two legally distinct plaintiffs, an issue defendants raise for the first time on reconsideration; and (3) that substantial difference of opinion over the question of when an action is "commenced" for purposes of Missouri's savings statute justifies certification for interlocutory appeal. For the reasons stated below, the Motion is granted in part and denied in part.

### A. *Davis v. Liberty Mutual Insurance Co.* Does Not Render Application of the Missouri Savings Statute to a Borrowed Statute of Limitations a Clear Error of Law

Defendants seek reconsideration of the Court's ruling that the Missouri savings statute may be applied to a foreign statute of limitations borrowed under the Missouri borrowing statute. Defendants rely primarily on the case *Davis v. Liberty Mut. Ins. Co.*, 55 F.3d 1365, to contend that "under the Missouri borrowing statute, when a court borrows the statute of limitations of another state, it also must borrow the other state's savings statute and does not apply Missouri's savings statute." Doc. 118 at 4. The Court concludes the defendants have failed to show that it made a clear error of law in applying the Missouri savings statute to a statute of limitations borrowed under the Missouri borrowing statute.

*1. Applicable Law*

In a case transferred pursuant to 28 U.S.C. § 1404(a), "the transferee district court must under § 1404(a) apply the law of the State of the transferor district court." *Van Dusen v. Barrack*, 376 U.S. 612, 642 (1964). "A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."[3] *Id.* at 640. In this case, the transferor court was "a federal court sitting in diversity within the State of Missouri" and was "required to apply Missouri's statute of limitations to claims brought before it." *Hopkins v. Kansas Teachers Cmty. Credit Union*, 265 F.R.D. 483, 489 (W.D. Mo. 2010) (citing *Rademeyer v. Farris,* 284 F.3d 833, 836 (8th Cir. 2002)). As the transferee court, this Court must do so as well.

In determining Missouri law, including its statute of limitations, a federal court must consider "[t]he State's highest court [as] the best authority on its own law." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1965). When the state supreme court has spoken, "its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *Aguilar v. Flores*, 549 F.2d 1161, 1163 (8th Cir. 1977) (quoting *West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 236 (1940)). Similarly, federal courts must give the decisions of intermediate appellate decisions "due regard, but not conclusive effect . . . unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000); *accord Cont'l Cas. Co. v. Advance*

---

[3] *Van Dusen* and its progeny, *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), reach only the question of which *state* law the transferee court must apply to a case in diversity jurisdiction after transfer pursuant to 28 U.S.C. § 1404(a). *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1045 (9th Cir. 2012). It does not address which *federal* law— that of the transferor or transferee jurisdiction—should be applied, and the Courts of Appeals are currently divided on the question. *Id.*; *Klatte v. Buckman, Buckman & Reid, Inc.*, Civil Action No. 14-0699, 2014 U.S. Dist. LEXIS 92286, at *14 (D.N.J. July 8, 2014). The parties in this case do not cite, and this Court was unable to find, opinions from the United States Courts of Appeals for the Third and Eighth Circuit addressing the issue. Nonetheless, it is unnecessary for this Court to reach the question as the two Courts of Appeals largely agree on the matters of federal law addressed in this Memorandum and Order.

*Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006). A federal district court is bound by decisions of its circuit construing state law, absent an intervening decision by the state's own courts. *See Arena Holdings Charitable, LLC v. Harman Professional, Inc.*, 785 F.3d 292, 296 (8th Cir. 2015). It is under these principles that this Court construes Missouri's statute of limitations.

The Missouri statute of limitations framework includes a "borrowing" statute, which requires that "[w]henever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Mo. Rev. Stat. § 516.190. In its August 11, 2017, Memorandum and Order, this Court concluded that the current action "originated" in Pennsylvania, and consequently, the Missouri borrowing statute incorporated Pennsylvania's two-year statute of limitations. The parties do not now dispute the Court's decision on that issue. In turn, the Missouri savings statute provides that "[i]f any action shall have been commenced within the times respectively prescribed in sections 516.010 to 516.370, and the plaintiff therein suffer a nonsuit . . . such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed." Mo. Ann. Stat. § 516.230. In its August 11, 2017, Memorandum and Order, the Court concluded that the savings statute applied to this case. Defendants challenge this conclusion as a clear error of law.

    *2. The Missouri Supreme Court Has Ruled that Missouri's Savings Statute Applies to a Borrowed Statue of Limitations, and* Davis *Does Not Compel Otherwise*

As noted above, this Court is bound by the opinions of Missouri's highest court in construing Missouri law, absent "clear and persuasive indication that its pronouncement will be modified, limited or restricted." *American Tel. & Tel. Co.*, 311 U.S. at 236. In *Turner v. Missouri-Kansas-Texas R.R. Co.*, 142 S.W.2d 455, 458 (Mo. 1940), the Missouri Supreme Court

addressed the question before this Court, holding that Missouri's savings statute applied to a tort action in which the borrowing statute incorporated Kansas's statute of limitations. The Missouri Supreme Court reached its decision based on a plain reading of the savings statute. The savings statute as then codified provided that in "any action [that] shall have been commenced within the times respectively prescribed in articles 8 and 9 of this chapter [then prescribing the applicable statute of limitations], and the plaintiff therein suffer a nonsuit . . . such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered." *Id.* at 458. At the time, "article 9" included Missouri's borrowing statute, then codified in Section 869. *Id.* Because the savings statute specified it applied to cases "commenced within the times prescribed in articles 8 and 9 of the chapter; and Sec. 869 does appear in said article 9," the Missouri Supreme Court held that the savings statute applied to a foreign statute of limitations borrowed through Missouri's borrowing statute. *Id.*

Recent decisions by Missouri's intermediate appellate courts have followed the Missouri Supreme Court's decision in *Turner*. In *McMillan v. Pilot Travel Ctrs., LLC*, 515 S.W.3d 699, 702 (Mo. Ct. App. 2016), the Court of Appeals of Missouri concluded that because "[t]he Missouri borrowing statute. . . is clearly included and referenced in the Missouri saving statute," the savings statute applied to a borrowed statute of limitations. Likewise, in in *McDonald v. Ward*, 919 S.W.2d 251 (Mo. Ct. App. 1996), the Court of Appeals of Missouri held that because the statutory sections listed in the savings statute included Missouri's borrowing statute, the savings statute applied to a borrowed statute of limitations.

Despite the holding in *Turner*, defendants in this case rely on the Eighth Circuit decision in *Davis v. Liberty Mutual Insurance Co.*, 55 F.3d 1365 (1995), to argue that application of a foreign statute of limitations precludes application of Missouri's savings statute. In *Davis*, the

Eighth Circuit held that borrowing the Iowa statute of limitations under the Missouri borrowing statute allowed for application of Iowa's savings statute as well. *Id.* at 1367. In its opinion, the Eighth Circuit relied heavily on a case decided by the Missouri Supreme Court, *Thompson v. Crawford*, 833 S.W.2d 868, 872 (Mo. 1992). In *Thompson*, the plaintiff appealed the dismissal of his wrongful death suit, arguing that the trial court erred in applying Tennessee's more restrictive tolling provision for minors rather than Missouri's more generous one. 833 S.W.2d at 869-70. In affirming the dismissal, the Missouri Supreme Court recited the general principle in the state, writing that "[w]hen [a statute of limitations] is so borrowed, it is not wrenched bodily out of its own setting, but taken along with it are the correct decisions of its own state which interpret and apply it, and the companion statutes which limit and restrict its operation." *Id.* at 872 (quoting *Devine v. Rook*, 314 S.W.2d 932, 935 (Mo. App. 1958)) (second alteration in original). In light of this principle, the Missouri Supreme Court held that "when borrowing the statute of limitations of a foreign state, the applicable tolling provision of that state is borrowed as well" and affirmed the application of Tennessee's tolling provisions. *Id.*

Neither *Davis* nor *Thompson*, however, provides a "clear and persuasive indication" that the Missouri Supreme Court would overturn *Turner*. Neither opinion mentions, much less discusses, the applicability of Missouri's savings statute. The bulk of the opinion in *Davis* construes the requirements of Iowa's statute of limitations. *Id.* at 1368-69. The Eight Circuit never squarely confronts the issue presented in this case—namely, whether Missouri's savings statute may apply to a borrowed statute of limitations. *Id.* at 1367. Likewise, *Thompson* does not address the application of Missouri's savings statute to a borrowed statute of limitations, only whether foreign tolling provisions are also borrowed. And although the tolling provision at issue in *Thompson* provides that it applies to "section[s] 516.100 to 516.370," 833 S.W.2d at 872,

paralleling the language in Missouri's savings statute, the *Thompson* court does not address this language in reaching it decision. Consequently, neither *Davis* nor *Thompson* provides clear indicia the Missouri Supreme Court would overturn its holding in *Turner*.

To bolster their argument, the defendants turn to the district court opinion in *Davis*, 840 F. Supp. 90 (E.D. Mo. 1993). In the district court, the plaintiffs in *Davis* argued that Missouri's borrowing statute incorporated Iowa's savings statute, or "[a]lternatively," that Missouri's savings statute applied. *Id.* at 92. The district court in *Davis* did not expressly reject the application of Missouri's savings statute, but instead ordered the parties to provide additional factual briefing on the application of Iowa's savings statute. *Id.* Defendants in this case contend that this order implies the rejection of Missouri's savings statute. The district court in *Davis*, however, did not discuss either *Turner* or the applicability of the Missouri savings statute. In short, the district court opinion in *Davis* does not provide grounds for rejecting the Missouri Supreme Court's interpretation of Missouri state law.

In sum, the cases cited by the defendants do not provide a "clear and persuasive indication" that the pronouncements of *Turner*, *McDonald*, and *McMillan* "will be modified, limited or restricted." *American Tel. & Tel. Co.*, 311 U.S. at 236. "When a state's highest court denies review, the policy reasons for following an intermediate court decision (absent compelling evidence to the contrary) are strengthened." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010). In both *McMillan* and *McDonald*, the Missouri Supreme Court denied an application for transfer and rehearing, letting the decisions of the Court of Appeals of Missouri stand well after it decided *Thompson*. *McMillan v. Pilot Travel Ctrs., LLC*, 2017 Mo. LEXIS 177 (Mo. May 2, 2017); *McDonald v. Ward*, 919 S.W.2d 251 (Mo. Ct. App. 1996). Likewise, in *Thompson*, the Missouri Supreme Court explicitly overturned an earlier precedential

opinion, *Dorris v. McClanahan*, 725 S.W.2d 870 (Mo. 1987), a case that addressed the application only of Missouri's tolling statute. *Thompson v. Crawford*, 833 S.W.2d 868, 872 (Mo. 1992). The Missouri Supreme Court did not mention *Turner*, decided fifty-two years earlier, much less overturn it. This Court cannot "presume the [Missouri] Supreme Court has overruled its previous decision unless it proclaims otherwise." *McMillan*, 515 S.W.3d at 706. Consequently, *Turner* and its progeny remain binding on federal courts interpreting Missouri law. *Id.* For the above reasons, the Court concludes it did not err in its application of the Missouri savings statute to the case.

### B. This Court Erred in Applying Missouri's Savings Statute to Two Legally Distinct Plaintiffs

In their Motion for Reconsideration, defendants also argue for the first time that Missouri's savings statute does not apply to actions filed by legally distinct plaintiffs. The Court agrees.

#### 1. *Importance of the Issue Justifies Its Consideration for the First Time on Reconsideration*

The Court notes that defendants raise the argument that Missouri's savings statute does not apply to legally distinct plaintiffs for the first time in their Motion for Reconsideration. Ordinarily, courts take a "take a dim view of issues raised for the first time" in a motion for reconsideration. *Kiewit E. Co. v. L & R Constr. Co.*, 44 F.3d 1194, 1204 (3d Cir. 1995). Generally, a motion for reconsideration "is not to present a better and more compelling argument that the party could have presented in the original briefs." *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005); *accord Wootten v. Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016).

Nonetheless, it is "not consistent with the wise exercise of discretion for the District Court to . . . decline[] even to consider" an issue because the parties raised it for the first time on

reconsideration if the issue is "fundamental" to "the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999). In *Max's Seafood*, the district court held a corporation in contempt for violations of an injunction issued against the owner of the corporation. *Id.* at 672–73. The evidence showed that the violations occurred before the date of incorporation of the corporation. *Id.* On a motion for reconsideration, the corporation argued that it could not be liable for actions committed before it existed. *Id.* The district court declined to hear the issue, because the corporation had raised it for the first time in the motion for reconsideration. *Id.* at 673.

The Third Circuit reversed, stating that although the district court concluded there was no intervening change in controlling law or new evidence, it did not consider "the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* at 677–78. The Third Circuit reasoned that the date of incorporation was "so fundamental" that it sufficed to show that "the district court's order resulted in a clear error of law and fact and that the court's later refusal to reconsider the order was not consistent with the sound exercise of its discretion." *Id.* at 679.

This Court, following *Max's Seafood*, will consider the same-plaintiff issue notwithstanding the fact that it was raised for the first time by Motion for Reconsideration.

## 2. *Missouri Law Bars the Application of the Savings Statute to Two Legally Distinct Plaintiffs*

In their Motion, defendants argue that Missouri's savings statute does not apply to cases filed by two legally distinct plaintiffs. The Court agrees. In *Meddis v. Wilson*, 74 S.W. 984, 986 (Mo. 1903), the Missouri Supreme Court held that the savings statute applies only to legally identical plaintiffs. In that case, the widow and devisee of a decedent landowner filed a suit of ejectment to reclaim land from adverse possessors. *Id.* at 985. Following her death, the case was dismissed for failure to prosecute. *Id.* A creditor purchased the land at an estate sale and filed a

new ejectment suit after the statute of limitations had run. *Id.* The trial court dismissed the creditor's case as time barred. *Id.* The Missouri Supreme Court affirmed, holding that the savings statute by its text is limited to "such plaintiff" who instituted the original suit and that no provision is made for other plaintiffs to take advantage of the statute. *Id.* at 986.

The Court of Appeals of Missouri recently followed *Meddis*. In *Smith v. Tang*, 926 S.W.2d 716, 717 (Mo. Ct. App. 1996), that court affirmed the trial court in dismissing plaintiff's complaint as time barred. Plaintiff had initially filed a wrongful death suit in her personal capacity, claiming that she acted as the "prospective" personal representative of the decedent's estate. *Id.* at 718. The trial court dismissed the suit because the relevant Missouri statute required the suit to be filed by the actual personal representative of the estate. *Id.* Plaintiff was later appointed personal representative of the estate and refiled suit in that capacity, but after the statute of limitations had run. *Id.* The trial court dismissed the case. In affirming the trial court, the Missouri Court of Appeals emphasized that the savings statute provides that if "the plaintiff therein suffer a nonsuit, . . . *such plaintiff* may commence a new action." *Id.* at 719 (omission and emphasis in original). As in *Medis*, the court reasoned that "such plaintiff" limited the right to commence a new action to the plaintiff in the original action. *Id.*

More recent appellate decisions in Missouri favor this same reading of the savings statute. *E.g.*, *Webster v. Otwo I, Inc.*, 296 S.W.3d 501, 505 (Mo. Ct. App. 2009) (holding that the savings statute did not apply to a suit filed by individual debtors and then refiled by the trustee of their bankruptcy estate); *Aufenkamp v. Grabill*, 165 S.W.3d 191, 194 (Mo. Ct. App. 2005) (holding that the savings statute did not apply because "[a]s the legal heirs and personal representatives of their father's estate in *Aufenkamp II*, the Aufenkamp brothers were not the same individual plaintiffs who filed the original breach of contract claim in *Aufenkamp I*.").

Plaintiffs point to dicta in *Smith* stating that an "exception [to the above rule] arises only where the second plaintiff sues in the same right as the original plaintiff, such as a successor trustee." 926 S.W.2d at 719. In particular, plaintiffs argue that the Supplemental Complaint was filed by class counsel "on behalf of the then existing certified class of which David Oetting was a class representative" and that this suit was brought by Oetting "in his name and on behalf of the same class—subject to a second class certification by the same court. Both suits were filed in a representative capacity on behalf of the NationsBank class." Doc. No. 119 at 3. According to plaintiffs, the current case thus falls within the exception described in *Smith*.

Plaintiffs' argument is misplaced. Missouri courts have cast the "exception" to the same-plaintiff requirement narrowly, limiting it to situations in which there is an "identity of right, or privity of interest between the plaintiff[] in the first suit and the plaintiff in this suit." *Meddis*, 74 S.W. at 986. In *Meddis*, the Missouri Supreme Court rejected the argument of the creditor who purchased the land that its suit was within the "spirit" of the savings statute. *Id.* According to the *Meddis* court, the refiled suit was "not the same in either form or substance" as the original suit filed by the landowner's devisee. *Id.* Similarly, in *Smith*, the court stated that the exception might extend to an entity such as a "successor trustee," implying that identity of right does not pass to the same individual filing in two different capacities. 926 S.W.2d at 719.

Plaintiffs cannot show an identity of right between the classes in the MDL and the class certified in this case. As an initial matter, neither James nor David Oetting—the two individuals who served as named plaintiffs and class representatives in this case—were named as plaintiffs in the Supplemental Complaint docketed in the MDL. Only the "NationsBank Class" was identified as a plaintiff in the Supplemental Complaint.

Further, there is no identity of right between the class in this case and the classes in the

18

MDL. Two reasons compel this conclusion. First, a class certified under Rule 23 is not a legal entity such as a corporation or a partnership that exists outside the confines litigation, but is defined and certified only for a particular suit. Nothing in Rule 23 suggests that the class may exercise rights or even exist outside of the litigation for which it was certified. Importantly, the class itself does not have the right to "sue or be sued," as Rule 23 grants that right only to representative parties meeting the requirements of Rule 23(a). Thus, despite plaintiffs' contentions in this case, a class cannot purport to file a Supplemental Complaint in one suit and then, as the same legal entity, initiate an entirely separate suit.

This reasoning underscores why plaintiffs cannot rely on the argument that "[b]oth suits were filed in a representative capacity on behalf on the NationsBank class." Because the existence and rights of the classes in the MDL did not continue beyond that litigation, David Oetting's filing of the Complaint in this case did not commence a new action on behalf of the classes in the MDL. Instead, it commenced a new action on behalf of a new class altogether.

A second reason demonstrates that there is no identity of right between the class in this case and the classes in the MDL: the class in this case is defined differently than the classes in the MDL. The definition of the class certified in this case begins with "[a]ll individuals and entities who are or were members of one of the NationsBank classes in *In re BankAmerica Securities Litigation*" and adds additional restrictions, as described above. Consequently, not all members of the classes in the MDL are included in this case. Those excluded would be unable to exercise the rights guaranteed to them under Rule 23, such as the right to certain notices. *See* Fed. R. Civ. P. 23(c)(2)(B), (e). Thus, the class in this case does not include all class members in the MDL, and the two cannot be said to be the same legal entity.

Finally, plaintiffs cite *Centerre Bank v. Angle*, 976 S.W.2d 608, 610 (Mo. Ct. App. 1998), a case involving the question whether a suit between the three shareholders of a corporation could be refiled as a derivative action under the savings statute.  In that case, the Missouri Court of Appeals reversed a jury verdict in favor of two shareholders against the third shareholder, on the ground that the action should have been pled as a derivative action on behalf of the corporation.  *Id.* at 616.  Plaintiffs in *Centerre* argued the Court of Appeals should not require them to refile the action, because a refiled action would be barred by the statute of limitations. *Id.*  The Court of Appeals disagreed, noting that a second filing may "generally" invoke the Missouri savings statute if it were to satisfy the standard for relation back of amendments to pleadings.  *Id.*  This standard is satisfied if the amendment or second complaint arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *Id.*  In *Centerre*, the court concluded that "the facts, circumstances and cause of action asserted . . . in a derivative action would embody the very facts and issues set forth in the original action.  The only difference on remand is that the recovery must go to the corporation."  *Id.*

Plaintiff's reliance on *Centerre Bank* is misplaced because that case addresses only a change in the relief sought, not a change in the plaintiffs bringing the case.  As the *Centerre* court noted, "The only difference on remand is that the recovery must go to the corporation." 976 S.W.2d at 616.  In *Centerre*, both the suit as originally filed and the derivative suit as refiled were premised on plaintiffs suing in their capacity as shareholders.  *Id.* at 612, 614 (delineating cases that may be filed by shareholders individually and derivatively).  In this case, however, the Supplemental Complaint in the MDL and the Complaint filed in this action were filed on behalf of legally distinct classes.  Thus, the relevant question is not whether the factual matter of the Complaint filed in this action may relate back to the Supplemental Complaint, but whether two

legally distinct entities may invoke the provisions of the Missouri savings statute. Under *Meddis*, they may not.

As the transferee court under 28 U.S.C. § 1404(a), this Court is required to apply the state law that would have been applied had the case remained in the transferor court—namely, Missouri. Given the above, this Court concludes that Missouri law bars application of the savings statute to two legally distinct entities and that such bar applies in this case.

3. *The Parties Have Had Sufficient Notice of the Dispositive Nature of the Choice of Law Issue, and Missouri Law Justifies Entering Summary Judgment for Defendants*

The application of Pennsylvania's statute of limitations justifies entry of summary judgment for defendants. "It has long been established that, under the right circumstances, district courts are entitled to enter summary judgment sua sponte." *Gibson v. Mayor and Council of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004). A court may not enter summary judgment sua sponte without "'placing the adversarial party on notice that the court is considering a sua sponte summary judgment motion' and providing that party 'an opportunity to present relevant evidence in opposition to that motion.'" *Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir. 2006) (quoting *Chambers Dev. Co. v. Passaic County Utils. Auth.*, 62 F.3d 582, 584 n.5 (3d Cir. 1995)); *accord Shur-Value Stamps v. Phillips Petroleum Co.*, 50 F.3d 592, 595 (8th Cir. 1995). The notice requirement is satisfied if "the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Gibson*, 355 F.3d at 223–24; *accord Madewell v. Downs*, 68 F.3d 1030, 1050 (8th Cir. 1995) (affirming grant of sua sponte summary judgment where parties had availed themselves of the opportunity to "address the legal and factual arguments" at hand). Where notice is required, it must comply with the ten-day period prescribed by Federal Rule 56(c). *Gibson*, 355 F.3d at 223.

In this case, the notice requirement has been satisfied. Plaintiffs have been apprised at

least three times of the dispositive nature of the choice of law issue. First, plaintiffs had notice that the Court would rule on the applicable statute of limitations *at least* as early as the Court's June 1, 2017, Order expressly requiring additional briefing on the applicable statute of limitations. Doc. No. 110. The parties themselves briefed the issue, in part, in their earlier choice of laws briefs. Second, the parties agreed in a telephone conference with the Court on August 4, 2017, that the choice of law and statute of limitations issues were ripe for ruling. Finally, this Court ruled in its August 11, 2017, Order that Pennsylvania's two-year statute of limitations controlled the current case and would serve as a complete bar absent application of Missouri's savings statute. Doc 116 ¶¶ 1-2. Plaintiffs, consequently, had sufficient notice that the choice of law issue was dispositive of the current action and that defendant's Motion for Reconsideration could result in dismissal. Plaintiffs thus had every opportunity to "put [their] best foot forward." *Gibson*, 355 F.3d at 223–24.

The Court rules now that Pennsylvania's two-year statute of limitation requires entering summary judgment in favor of the defendants. The Court concluded in its August 11, 2017, Memorandum, as it does now, that this action accrued in Pennsylvania on November 20, 2008, and the statute of limitations expired on November 20, 2010. Doc. 117 at 12-13. This case was filed on February 8, 2011, after the expiration of the statute of limitations. *Id.* The parties have not challenged that conclusion and entry of summary judgment for defendants is appropriate.

### C. Because This Action Is Barred by Pennsylvania's Two-Year Statute of Limitations, The Motion for Certification of Interlocutory Appeal Is Denied

In the alternative, defendants seek leave to file an interlocutory appeal of the Court's ruling that filing of a supplemental complaint "commenced" an action for purposes of the Missouri savings statute. Ordinarily, a judgment must be final in order to be appealable. *Catlin v. United States*, 324 U.S. 229, 233 (1945). As noted above, a final judgment is "one which ends

the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Penn W. Assocs. v. Cohen*, 371 F.3d 118, 125 (3d Cir. 2004) (quoting *Catlin*, 324 U.S. at 233). However, under 28 U.S.C. § 1292(b), an interlocutory order may be certified for appeal, where the order:  (1) involves a "controlling question of law," (2) offers "substantial ground for a difference of opinion" as to its correctness, and (3) if appealed immediately, would "materially advance the ultimate termination of the litigation."  *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).  This Court has determined that Pennsylvania's two-year statute of limitations bars this action.  Consequently, certification of an interlocutory appeal would not "materially advance the termination of the litigation," and the Motion for Interlocutory Appeal is denied.

## V.        CONCLUSION

For the foregoing reasons, defendants' Motion for Reconsideration or, in the Alternative, to Certify Order for Interlocutory Appeal is granted with respect to this Court's Memorandum and Order dated August 11, 2017 and the question whether Missouri law bars the application of the Missouri savings statute to two legally distinct entities, an issue not addressed in that Memorandum and Order and not previously raised by defendants.  The Court now concludes that the Missouri savings statute is inapplicable to two legally distinct entities and thus is inapplicable to the claims in this case.  The Court further determines that this action is barred by Pennsylvania's borrowed two-year statute of limitations.  Upon reconsideration with respect to those issues, the Motion for Reconsideration is granted.  The Motion for Reconsideration or, in the Alternative, to Certify Order for Interlocutory Appeal is denied in all other respects.  Because the action is barred by the Pennsylvania two-year statute of limitations, summary judgment is entered, sua sponte, in favor of defendants and against plaintiffs.  An appropriate order follows.